THE AMERICAN OIL COMPANY *vs.* MARIA CHERUBINI
& others.[1]

Middlesex.   November 10, 1966. — January 9, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, SPIEGEL,
& REARDON, JJ.

*Option. Contract,* What constitutes, Option, For sale of real estate, Performance and breach. *Landlord and Tenant,* Option to purchase. *Equity Jurisdiction,* Mistake, Reformation. *Limitations, Statute of.*

Under a lease granting the lessee an "option to purchase the demised premises . . . at any time during the term of this lease" for a stated price, and providing that "If the lessor at any time during the term of this lease . . . receives a bona fide offer to purchase the . . . premises which offer the lessor desires to accept, lessor agrees to give lessee" written notice thereof and the "lessee shall have the first option to purchase the . . . premises . . . at the same price and on the same terms" as such offer, a seasonable exercise by the lessee of its option to purchase for the stated price created a bilateral contract between the parties requiring the lessor to convey the premises to the lessee for that price, despite the lessee's receipt thereafter during the term of a bona fide offer for the purchase of the premises at a higher price.   [584–585]

Under a lease granting the lessee an option to purchase the demised premises and providing that in the event the lessee exercised the option it should do so by written notice to the lessor, that "upon payment of the purchase price" the lessor would convey the premises "by a good and marketable record title . . . with covenants . . . and further assurances, as lessee shall require," and that settlement of the purchase price with appropriate adjustments and conveyance of the premises should be made within sixty days after the exercise of the option, a tender of the purchase price by the lessee at the time of giving notice of exercise of the option was not a prerequisite of an effective exercise thereof.   [585–586]

Where the parties to a lease granting the lessee an option to purchase the demised premises intended in the description of the premises in the lease to draw an easterly boundary which would close the premises at the point of beginning on the southerly boundary by a straight line thereto from the termination point of the northerly boundary, but by mutual mistake drew an easterly boundary which was easterly of the intended boundary and did not close the premises, the lessee was entitled in an equity proceeding to a decree ordering the description in the lease reformed to reflect the intention of the parties.   [586–588]

---

[1] Dominic A. Cherubini, Battista A. Cherubini, and Catherine L. Cherubini.

The statute of limitations was not a bar to maintenance of a suit in equity by a lessee, who was granted in the lease an option to purchase the demised premises, to reform the lease by correction of a defect in the description of such premises therein where, although the suit was not brought until nearly ten years after execution of the lease, it was begun shortly after exercise of the option and the defect in the description was pleaded in the bill. [588]

BILL IN EQUITY filed in the Superior Court on May 16, 1961.

The suit was heard by *Fairhurst, J.*

*Francis L. Swift* for the defendants.

*Timothy H. Donohue* for the plaintiff.

SPIEGEL, J. This is a bill for specific performance of an agreement in a lease to convey the demised premises and for reformation of the lease by correcting the description of the premises. The judge made "Findings of Fact, Rulings of Law and Order for Decree," which he subsequently adopted as a Report of Material Facts. From a final decree granting specific performance and reforming the lease, the defendants have appealed.[2] The evidence is not reported.

We summarize the findings of the judge. Maria Cherubini (Maria) owned certain premises in Clinton which she leased as of June 1, 1951, to The American Oil Company, the plaintiff, under a written lease, for a period of five years. The lease gave the plaintiff an option "to renew and extend this lease for a further term of Five (5) years next succeeding the term of this lease." It contained the further provisions: "6. (a) Lessee is hereby granted the right and option to purchase the demised premises . . . at any time during the term of this lease, or any renewal period, at and for the price of Twenty Thousand Dollars ($20,000.00) in fee simple. . . . (b) If the lessor at any time during the term of this lease or any renewal or extension thereof receives a bona fide offer to purchase the demised premises which offer the lessor desires to accept, lessor agrees to give lessee thirty (30) days notice in writing of such bona fide offer, setting forth . . . [certain in-

---

[2] The bill was dismissed as against Catherine L. Cherubini.

formation about the offer]. The lessee shall have the first option to purchase the demised premises within the above mentioned thirty day period at the same price and on the same terms of any such proposal. . . .

"In the event lessee shall exercise its purchase option under either (a) or (b) above, it shall do so by written notice to lessor; and in the event lessee shall exercise either of said purchase options, lessor covenants and agrees, upon payment of the purchase price as aforesaid, to convey the said property to lessee, its successors and assigns, by a good and marketable record title in fee simple, with covenants of general or special warranty and further assurances, as lessee shall require, free of all claims, liens, easements, restrictions and encumbrances; settlement of the purchase price, and conveyance of the property to lessee, shall be made within sixty (60) days from the date of the sending of such notice exercising said option; . . . taxes, water, rent and other current expenses, and rental hereunder, to be adjusted as of date of settlement."

The lease also provided that " [t]he terms, conditions and covenants of this lease shall be binding upon and shall inure to the benefit of each of the parties hereto, their heirs, personal representatives, successors, and assigns, and shall run with the land." The lease also stated that "[a]ny notice required or intended to be sent to lessor under the terms of this lease shall be sufficient if delivered in writing personally or if posted by registered mail addressed to Maria . . . at West Boylston Road, Clinton, Massachusetts."

The lease was recorded and the plaintiff operated a gasoline service station through a sublessee, Battista Cherubini (Battista), a son of Maria. The plaintiff exercised its option to "renew and extend this lease" for a term of five years ending May 31, 1961.

On February 10, 1961, the plaintiff "sent by registered mail to the defendant Maria Cherubini, West Boylston Road, Clinton, Massachusetts, a letter exercising its right and option to purchase the demised premises at and for the price of Twenty Thousand Dollars ($20,000.00) in fee sim-

ple.'' Maria received the letter on February 13, 1961. ''Up to the time when . . . Maria received the plaintiff's letter . . . she had never notified the plaintiff in writing, or otherwise, of any bona fide offer to purchase the demised premises made by any other person.'' After receipt of the plaintiff's letter Maria, Battista and Dominic A. Cherubini (Dominic) consulted an attorney. ''As a result of this conference, a letter dated February 24, 1961, was sent to the plaintiff in behalf of the defendant, Maria . . ., advising the plaintiff that she had received a bona fide offer to buy the demised premises from Dominic . . . and Battista . . . in the sum of forty-seven thousand eight hundred sixty ($47,860.00) dollars and that the deed was to be delivered on April 1, 1961.'' The plaintiff replied that its position was stated clearly in its letter of February 10, 1961. ''[W]ithout further notice to the plaintiff'' Maria conveyed the premises to Dominic and Battista on March 30, 1961, by a deed which was recorded. Dominic and Battista at that time ''knew of the outstanding claim and right of the plaintiff which was in conflict with the title they were about to acquire.'' On April 10, 1961, the plaintiff offered the purchase price of $20,000 by a check to Dominic and Battista and to their attorney, all of whom refused to accept the check. The plaintiff then sent a letter to Dominic and Battista in which it purported to exercise again its option to purchase, saving its ''rights under the exercising of the option as set forth in its letter of February 10, 1961 to Mrs. Maria Cherubini.'' The defendants have refused to convey the premises to the plaintiff.

The judge found that the plaintiff's letter of February 10, 1961, ''was a valid and proper exercise of its option to purchase the demised premises'' and ruled that the plaintiff had thereby accepted an offer by Maria to sell the premises. He also ruled that she was bound to convey the premises to the plaintiff and ''was without legal authority to act upon the third party offer under the provisions of clause 6 (b) of the lease.''

1. The defendants first argue that the lease should be construed to permit the lessor to solicit offers from bona

fide purchasers and restrict the lessee to its option under clause 6 (b) of the lease even though the lessee has exercised its option under clause 6 (a). We find no merit in this contention.

If the option held by the plaintiff under clause 6 (a) was exercised effectively "it ripened into a bilateral contract" under which the defendant Maria was obliged to convey the land upon payment by the plaintiff of the purchase price of $20,000 and upon completion of the other conditions of the sale set out in the lease. *Rigs* v. *Sokol,* 318 Mass. 337, 344. *Shayeb* v. *Holland,* 321 Mass. 429, 431. The option under clause 6 (b) was "simply an agreement giving the lessee the first chance to make a contract" on the same terms which another bona fide purchaser had offered. *Shayeb* v. *Holland, supra,* p. 433. The formation of a contract under clause 6 (a) vitiated the right of the lessor to solicit more attractive offers under clause 6 (b).

2. The defendants next argue that the option was not effectively exercised because no tender of the purchase price was made to Maria. It is clear, however, from the terms of the lease, that the option could be exercised by sending notice to Maria at her address. The obligation of the plaintiff to pay the purchase price and the obligation of the defendant Maria to convey the premises by deed were "concurrent and mutually dependent." *Rigs* v. *Sokol,* 318 Mass. 337, 344. Several other conditions of the contract had to be satisfied before the plaintiff would be obliged to pay the purchase price. For example, Maria was required to convey a "good and marketable record title in fee simple, with . . . further assurances, as lessee shall require, free of all claims, liens, . . . ." Furthermore, the option provided that settlement of the purchase price was to be made within sixty days of the exercise of the option, and that taxes, rent and other expenses were to be adjusted as of the date of settlement. The plaintiff was not required to make a tender of payment to entitle it to performance of the contract. *Rigs* v. *Sokol,* 318 Mass. 337, 344. The case of *Hill* v. *Allen,* 185 Mass. 25, relied on by the defendants, merely

holds that tenants exercising an option to purchase are not relieved from the obligation of paying rent until they demand performance of the contract to convey by a tender of payment of the purchase price. The option in that case did not detail the mutually dependent conditions of performance as are contained in the lease here being construed.

3. The remaining issue is the reformation of the lease. The description of the premises in the lease does not form a closed parcel of land.[3] The judge found that a scrivener's error resulted in setting the course of the westerly boundary at north 0° 41' east instead of north 10° 41' east. The defendants do not contest that finding. The judge also made the following findings. "[T]he parties intended (as derived from the lease itself) to include in the lease the southwesterly corner of the premises, originally conveyed by Lancaster Mills to Antonio Cherubini"; the description shown in the lease is defective in that the easterly boundary, south 7° 52' west 100' does not close the boundaries, and that in order to close the boundaries and to carry out the intention of the parties the easterly boundary "would begin at the termination point of the northerly boundary and continue in a straight line, namely, South 17° 36' West to the point of beginning." In the final decree the lease was reformed in accordance with the above findings.

---

[3] "Beginning at a point in said northerly line of Cameron Street, which point is distant westerly Seventy-six Feet (76) from the most southerly corner of the premises conveyed to Antonio Cherubini by Deed of Lancaster Mills dated January 6th, 1931, and recorded with Worcester District Deeds in Book 2535, Page 272; thence by a curve to the right, the radius of which is Ninety Feet (90), One Hundred Thirty-three and 84/100 Feet (133.84) by said Cameron and Chestnut Streets to the point of tangency in said Chestnut Street; thence north 0° 41' East Fifty-four and 73/100 Feet (54.73) by said Chestnut Street to a brass rod; thence south 79° 19' East One Hundred Feet (100) by other land of said Cherubini to a point; thence south 7° 52' West One Hundred (100) Feet, more or less, to the point of beginning.

"The lessor hereby grants to The American Oil Company the right to use in common with the said Cherubini for all purposes that streets are commonly used in said Clinton, a strip of land easterly of and adjoining the herein leased premises, said strip having a frontage of Seventy-six Feet (76) on Cameron Street and having a depth of Twenty-five Feet (25).

"Being the same premises described in lease between Antonio Cherubini and Maria Cherubini and The American Oil Company dated March 21st, 1934, and recorded in the office of Worcester Registry of Deeds, Book 2607, Page 381."

The defendants argue that the statute of frauds prohibits reformation of the lease because "a material part of the description of the land" was omitted. It has long been established that an erroneous description of land in a written instrument may be corrected by reformation of the instrument if the error was due to a mutual mistake of fact by the parties. *Goode* v. *Riley,* 153 Mass. 585. See *Reder* v. *Kuss, ante,* 15. It is apparent that in the instant case the defect in the description of the land was due to a mutual mistake. The defendants assert that "[w]hile . . . [the plaintiff] contends that the limited boundary should be continued to the right of way, so as to shape a specific tract of land, it is equally plausible to argue that the line should be directed at an angle to the nearest corner of the right of way, and thus shape an entirely different tract of land. A defect, therefore, appears to exist in the direction in which the line can go after the 100-foot mark . . .. [Since] the language of the memorandum is susceptible of shaping out a parcel of land other than that described, the memorandum does not satisfy the Statute of Frauds [citing *Michelson* v. *Sherman,* 310 Mass. 774]." But the judge found that the easterly boundary which the parties intended to draw closing the parcel did not run along the course south 7° 52' west, as specified in the lease and set out in the plaintiff's bill for reformation, but, rather, that it ran south 17° 36' west. Although the judge did not so state, it is obvious that reference to south 7° 52' west came from the original deed from Lancaster Mills to Antonio Cherubini. That course formed the easterly boundary of a parcel of land out of which the instant parcel was formed.

Since it was found that the parties intended to close the parcel by a straight line from the termination point of the northerly boundary, we are not confronted with a situation in which more than one parcel could be formed. This was not a case, such as the *Michelson* case, *supra,* 778, in which, "[i]nterpreting the scanty language of the memorandum in the light of the physical features of the land and the facts surrounding the parties at the time the memorandum was

signed . . . the boundaries of the land . . . [could not] be identified with sufficient accuracy.'' Nor is this a case in which the plaintiff is being given more land than is specified in the lease. Cf. *Wareham Sav. Bank* v. *Partridge,* 317 Mass. 83, 85–86.

The defendants also maintain that the statute of limitations prevents reformation of the lease since the mistake in the description of the land ought to have been discovered long ago. *Stoneham Five Cents Sav. Bank* v. *Johnson,* 295 Mass. 390, 395–396. The first occasion which the plaintiff would have had to check the sufficiency of the description of the land was its search of the title subsequent to the exercise of its option to purchase. The option was exercised on February 10, 1961, and the defect in the description of the premises was pleaded in the bill, filed May 16, 1961. We conclude that the plaintiff was not barred by the statute of limitations.

*Decree affirmed with costs of appeal.*