ALEXANDER BEAL & another, trustees, *vs*. STIMPSON
TERMINAL COMPANY & others
(and a companion case).[1]

Middlesex.    January 16, 1973. — January 15, 1974.

Present: ROSE, GOODMAN, & ARMSTRONG, JJ.

*Contract,* Construction, Termination.    *Words,* "Unless and until terminated as hereinafter provided."

Where it appeared that a grantor granted to a railroad the right to use and furnish service over certain tracks in an agreement giving the grantor the right to terminate it upon certain notice, that in

---

[1] New England Confectionery Company *vs*. Stimpson Terminal Company & others.

agreements executed several years later the same grantor granted to other grantees the right to use such tracks and sidings for the movement of freight, that the later agreements were made "subject to the conditions and limitations" of a city license of the grantor and of the earlier agreement, that in each of the later agreements the rights granted were subject to termination "as hereinafter provided" in paragraphs providing for termination in case of termination of the grantor's city license or breach of covenants by the grantee, and that the grantor gave the required notice to terminate the earlier agreement, it was held that, although the grantor, by making the later agreements, was not deprived of the right to terminate the earlier agreement, the later agreements were terminable as provided in them, were not subject to termination by or affected by the termination of the earlier agreement, and remained in effect. [657-660]

BILLS IN EQUITY filed in the Superior Court on December 20, 1970, and December 23, 1970.

The suits were heard by *Kalus, J.*

*Edward O. Proctor* for Stimpson Terminal Company.

*Walter A. McLaughlin, Jr.* (*Bruce Oravec* with him) for the plaintiffs.

ARMSTRONG, J.    These bills in equity were brought by Alexander Beal and Royal F. Beal, trustees of the Landsdowne Building Trust (Beal) and by the New England Confectionery Company (Necco) to enjoin the defendant Stimpson Terminal Company (Stimpson) from interfering with their access to certain spur tracks, sidings and extensions located in Cambridge, the rights to the use of which were granted by Stimpson to the plaintiffs or their predecessors in title under agreements executed in 1924. The other defendants, the trustees of the Penn Central Transportation Company (Penn Central), took no position in these suits. From final decrees which declared the rights of the parties under the 1924 agreements and which permanently enjoined Stimpson from interfering with Beal's and Necco's access to the tracks and sidings, Stimpson appeals. The trial judge adopted his findings, rulings and order for decree as his statutory report of material facts (G. L. c. 214, § 23). The evidence is reported.

In 1919, Stimpson executed an agreement with the New York Central Railroad Company (the railroad), the pred-

ecessor of Penn Central, whereby it granted the railroad rights to use and furnish service over the tracks involved in this controversy. That agreement contained separate provisions which reserved to each party a right to terminate the instrument. To exercise its right to terminate, Stimpson was required to furnish to the railroad thirty days' written notice of its intention to do so.

In 1924, Stimpson executed agreements with Necco and with Beal's predecessor in title granting each the right and privilege to use the said tracks and sidings for the movement of freight. These agreements were expressly made "subject to the conditions and limitations" of Stimpson's license from the city of Cambridge and of the 1919 agreement. Each 1924 agreement also provided that the right and privilege granted would continue "unless and until terminated as hereinafter provided." The paragraphs following thereafter expressly provided two alternate conditions of termination: (1) termination of Stimpson's license by the city of Cambridge or (2) breach of the covenants of the agreement by the grantee. Beal and Necco treat the clause "so long as the Railroad Company continues to be ready and willing to so haul said cars" — a clause which also appears after the words "unless and until terminated as hereinafter provided" — as a third condition upon which termination might occur.

On October 26, 1970, Stimpson sent Penn Central a notice of intent to terminate the 1919 agreement, effective December 31, 1970. On the same day Stimpson notified Beal and Necco of its termination of the 1919 agreement with the railroad, indicating that such action would also result in the termination of the 1924 agreements. Penn Central was and continues to be willing to provide service to Beal and Necco on these tracks.

In their prayers for relief, Beal and Necco respectively sought to enjoin Stimpson from terminating the 1919 agreement as well as the 1924 agreement. The final decrees declared the rights of the parties under the 1924 agreement; they did not state whether the 1919 agreement was validly terminated. Beal and Necco argue that Stimpson, by

entering into the 1924 agreement, in effect obligated itself
not to exercise its right to terminate the 1919 agreement.
We do not think this interpretation can be supported. On
the contrary, the 1924 agreements were expressly made
subject to the "conditions and limitations" of the 1919
agreement. One of those "conditions and limitations" was
Stimpson's power to terminate. We find nothing in the 1924
agreements which expressly or by necessary implication
deprives Stimpson of that power. It cannot be maintained
that Beal's easement deriving from a 1910 grant to use the
ways on which the spur tracks lie "for all purposes" has the
effect of preventing Stimpson from exercising its power to
terminate the 1919 agreement.

On the other hand, we find nothing in the 1924 agree-
ments which makes them subject to termination by Stimp-
son's termination of the 1919 agreement. The parties made
the 1924 agreements subject to the "conditions and limita-
tions" of the 1919 agreement, but we do not conclude from
this that the 1924 agreements are subject to the continued
existence of the 1919 agreement. The 1924 agreements
expressly establish the methods of termination. The words
"unless and until terminated as hereinafter provided" are
unambiguous and should be given their ordinary meaning.
*Ober* v. *National Cas. Co.* 318 Mass. 27, 30 (1945). *Zarum*
v. *Brass Mill Materials Corp.* 334 Mass. 81, 84 (1956).
*deFreitas* v. *Cote,* 342 Mass. 474, 477 (1961). They direct us
to examine the text following them, not the text preceding
them, for the conditions of termination. In this regard, we
note the inconsistent treatment which the 1924 agreements
accord to the conditions and limitations of the 1919
agreement and the conditions and limitations of the license
from the city of Cambridge. While the 1924 agreements
between the plaintiffs and Stimpson are expressly made
"subject to the conditions and limitations" of both the 1919
agreement and the license from the city of Cambridge, the
termination of the license is specified after the "here-
inafter" provision as a condition of termination. The
termination of the 1919 agreement is not. Had the parties
wished to make the termination of the 1919 agreement a

condition terminating the 1924 agreements, we think it reasonable to assume that they would have followed the form of drafting used in connection with the Cambridge license and inserted a reference both prior and subsequent to the "hereinafter" clause. See *Hamlen* v. *Rednalloh Co.* 291 Mass. 119, 123-124 (1935); *Chatham Pharmaceuticals, Inc.* v. *Angier Chemical Co. Inc.* 347 Mass. 208, 211 (1964). Furthermore, any ambiguity in this regard must be construed against Stimpson as the drafter of the agreement. *Massachusetts Turnpike Authy.* v. *Perini Corp.* 349 Mass. 448, 454 (1965). *Wright* v. *Commonwealth,* 351 Mass. 666, 673 (1967).

The trial judge was therefore correct in ruling that the 1924 agreements were not affected by Stimpson's termination of the 1919 agreement, but remain in effect. Because of this conclusion, it is not necessary to pass upon Beal's additional contention that it has a right to use the Stimpson track as a result of a 1910 easement.

The final decree in equity No. 31583 is amended by striking the paragraph numbered "1" relating to the 1910 easement and as so modified the final decree is affirmed. The final decree in equity No. 31624 is affirmed.

*So ordered.*