A. AMORELLO & SONS, INC. *vs.* BEACON CONSTRUCTION COMPANY, INC. June 30, 1981. A. Amorello & Sons, Inc. (Amorello), was the excavation subcontractor for the Worcester Center project, a commercial complex consisting of office buildings, retail sales buildings, garages and plazas in Worcester. Beacon Construction Company, Inc. (Beacon), was the general contractor. Amorello's claim in this action is that certain items of work Amorello was required by Beacon to do were extra-work items, not included (as Beacon contends) within the lump-sum contract price of $523,600. The case was tried to a master along with an action brought by Beacon against Amorello which is not before us. The master's report was modified in several respects by the judge. Both parties have appealed from the second amended judgment entered in Amorello's action on the master's report, as modified. 1. The two largest categories in dispute concern excavation of ledge. A borings report, one of the contract drawings incorporated in the contract, indicated that substantially less ledge would be encountered on the construction site than was in fact found. Article 8 of the specifications stated that the lump-sum contract price "includes all costs for removal and disposal of all classified and unclassified excavation to the depth shown on the contract drawings." Standing by itself, article 8 would suggest that the burden of dealing with ledge conditions more onerous than expected falls on Amorello. Compare *D. Federico Co.* v. *Commonwealth*, 11 Mass. App. Ct. 248, 250-251 (1981). But article 12.1.6 of the general conditions stated in part: "Should concealed conditions encountered in the performance of the work below the surface of the ground be at variance with the conditions indicated by the Contract Documents . . ., the Contract Sum shall be equitably adjusted by Change Order upon claim by either party made within a reasonable time after the first observance of the conditions." Although the contract provides that the specifications take precedence over the general conditions in the event of conflict, we do not read article 12.1.6 to be in conflict with article 8 of the specifications but rather to make provision for a situation not expressly dealt with in article 8: namely, a discrepancy between the subsurface conditions shown in the contract drawings and those found in fact to obtain. The judge correctly sustained the master's view that article 12.1.6, which is very broadly drafted, had the effect of casting on Beacon, as the general contractor, the responsibility of adjusting the contract price to reflect the increased cost of removal of ledge in excess of that shown in the borings report. The unit prices fixed in the contract were an appropriate measure of the equitable adjustment required by article 12.1.6. 2. The second ledge item concerned the excavation of trenches in ledge in order to pour concrete footings, as Amorello was directed by Beacon to

do. The contract drawings stated that all footings in the ledge area would "bear upon rock," and Amorello interpreted that to mean that it would not be required to excavate trenches below plan bottom for poured concrete in the areas where excavation down to plan bottom had already reached the ledge underpinning. The point was at least ambiguous, and the master did not err in admitting evidence of the precontract negotiations to resolve the ambiguity. *Stoops* v. *Smith*, 100 Mass. 63, 66 (1868). *Hebb* v. *Welsh*, 185 Mass. 335, 336 (1904). See *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753-754 (1973). From that evidence the master made findings, not disputed as to accuracy, that the components from which Amorello's lump-sum bid was built up made provision for trench excavation in dirt and omitted any provision for trench excavation in ledge, and that this fact was known to representatives of Beacon with whom the final lump-sum contract price was worked up. On these findings, the master could properly draw the inference, which he did, that the parties did not intend to include trench ledge excavation in the lump-sum price and that such excavation was a contract extra. We think that the judge erred in striking the portions of the master's report allowing Amorello's claim for trench-ledge excavation. 3. Contract revision No. 14, which Beacon argues operated as a waiver by Amorello of its claims for certain of the open- and trench-ledge items included in the work described in 1 and 2 above, uses an ambiguous formulation: namely, that "[t]his revision . . . constitutes a satisfaction of all claims of the subcontractor which are incidental to or in consequence of the changes herein made." The items at issue are not among those in which changes were made, but, rather, they were disallowed in their entirety. The language in question is properly treated as confined in its effect to claims by the subcontractor which are integrally related to items allowed in whole or in part by the contractor, particularly in view of the fact that the ambiguity appears in a form employed by Beacon. *Merrimack Valley Natl. Bank* v. *Baird*, 372 Mass. 721, 724 (1977). *Beal* v. *Stimpson Terminal Co.*, 1 Mass. App. Ct. 656, 660 (1974). Any other reading would be manifestly unfair to Amorello, forcing it to forgo its claim with respect to disallowed items as a condition of receiving prompt payment with respect to uncontested items which are unrelated to the disallowed items. We decline to adopt such a construction. 4. The master made a finding, seemingly general in nature, that Amorello's failure to excavate five inches for a concrete floor in garage B (instead he excavated two inches, which would have been appropriate for an asphalt floor) "resulted from confusion and unintentional error by Amorello" and was not "an intentional breach of its contract by [Amorello]." The basis for that finding did not appear, but that was not a ground for striking the finding from the report. *Bills* v. *Nunno*, 4 Mass. App. Ct. 279, 281-282 (1976). There was no motion to recommit the report (*id.* at 282-283); and, although Beacon filed an objection to the finding on the ground that it was not supported by the evidence, it did not

file an affidavit summarizing the evidence bearing on the point. See *Miller* v. *Winshall*, 9 Mass. App. Ct. 312, 315-316 (1980). The objection was correctly overruled. Amorello was backcharged $11,887.25 for the costs incurred by Beacon in completing the excavation work in Garage B. That work, measured against the entire contract, was sufficiently minor as not to preclude the master's finding that Amorello had substantially completed its obligations under the contract. Given these findings by the master concerning substantial performance and nonintentional breach, the judge ruled correctly that Amorello was not barred from a quantum meruit recovery. *Handy* v. *Bliss*, 204 Mass. 513, 519 (1910). *Zarthar* v. *Saliba*, 282 Mass. 558, 561-562 (1933). *Hayes Pump & Mach. Co.* v. *Pitman & Brown Co.*, 331 Mass. 240, 241-243 (1954). *P.J. Riley & Co.* v. *Aberthaw Constr. Co.*, 3 Mass. App. Ct. 275, 278 (1975). See also *Burke* v. *Coyne*, 188 Mass. 401, 404 (1905). 5. The judge correctly ruled that the ramp work which was the basis of Amorello's invoices 627 and 923 fell within the scope of Amorello's duty to construct and maintain temporary ramps, as broadly defined in part 4(i) of the specifications. The master's findings furnished no basis for a conclusion that the particular rampway revisions represented by those invoices went beyond what would ordinarily be required in a construction project of comparable scope. 6. There was no basis in the master's report for treating work slips 01739 and 01851 differently from the other work slips included in invoice 544. All were subject to the master's general finding that they represented avoidable duplication of work by Amorello, necessitated by failures of other subcontractors and, implicitly, the general contractor. As that finding is not shown to be erroneous, the invoice should have been treated in its entirety as an extra-work item. 7. The judge correctly disallowed invoice 917, which represented duplicate excavation due to a mudslide, apparently caused by an unforeseen soil condition. There was nothing in the master's report to support Amorello's suggestion in its brief that Beacon had permitted the hole to remain open for an unreasonably long time. 8. Invoices 756, 928 and 930 all represented work which the master found to be "unnecessary duplication of work by Amorello due to the failure of other subcontractors to perform on time and the uncoordinated sequence of labor." As no basis appears for striking that finding, the invoices were improperly disallowed for payment as extras. The same is true of invoice 947, which the master found was for work made necessary by Beacon's negligence. 9. No valid reason appears for the judge to have disallowed invoice 803. Beacon's objection to the master's findings regarding that invoice was that they were not supported by the evidence. The record does not indicate that the evidence was before the judge, properly or otherwise, and Beacon neither obtained nor, for the reason given in part 4, *supra*, was entitled to obtain a summary of the evidence relevant to the finding. As there is no basis in the master's report for challenging his conclusion that invoice 803 was an extra-work item, the conclusion must

stand. See *Michelson* v. *Aronson*, 4 Mass. App. Ct. 182, 189-190 (1976).
10. The second amended judgment is to be modified by adding to the base
amount of Amorello's recovery the sum of $32,155.16 (the total of
$29,810.00, $652.00, $1,619.79, and $73.37, the amounts held in parts 2,
6, 8 and 9 hereof, respectively, to have been improperly disallowed), and
by recomputing interest accordingly. As so modified, the judgment is af-
firmed.

*So ordered.*


*Robert J. Sherer* for the defendant.
*James F. Cosgrove* for the plaintiff.