## AMOCO OIL CO.
### v.
### Paul A. LONDON and Sheldon JAFFEE

### No. 80-5966

Superior Court
Commonwealth of Massachusetts

### September 25, 1981

**Timothy H. Donahue,** counsel for plaintiff
**Edward J. Lee,** counsel for plaintiff
**Patrick J. Sharkey,** counsel for defendant
**Johnathon L. Krovetz,** counsel for defendant

## FINDINGS OF FACT, RULINGS OF LAW and ORDER FOR JUDGMENT

This case involves an interpretation of a certain lease[1] containing dual purchase options to determine whether the plaintiff should be permitted to exercise the fixed price option under that lease. The plaintiff seeks specific performance of the lease to compel the defendants to convey the property to plaintiff in exchange for $110,000.00. The defendants present a number of defenses,[2] primarily arguing that the dual purchase options in the lease create an ambiguity and that the lease terms are unconscionable. The defendants pray for a declaration that they may sell the property to Friend Building Center of Burlington, Inc. for $350,000.00 free and clear of any claims by the plaintiff.

The matter came on for trial on September 8 and was submitted on a series of stipulations and exhibits, together with testimony of Eugene R. O'Brien, Sheldon Jaffee and Mark Jaffee.

### FINDINGS OF FACT

The parties made the following stipulations of fact:

1. The plaintiff is the lessee under a

---

[1] As hereinafter referred to as the lease, it encompasses the Lease, the Lease Agreement and two Lease Riders. The parties signed all three documents on the same date.

[2] In their answer, defendants plead as a second defense that the fixed price option had been revoked prior to the purported acceptance by Amoco; third defense, laches; fourth defense, unclean hands; fifth defense, Amoco intentionally relinquished its rights; sixth defense, waiver; eighth defense, estoppel; ninth defense, the plaintiff no longer has an option available to it.

lease, dated April 12, 1962, of a parcel of real estate located at the corner of Middlesex Turnpike and Adams Street, Burlington, Massachusetts.

2. This lease was for an initial term from May 1, 1962, through September 30, 1977.

3. At the same time that this lease was executed, the plaintiff, lessee under this lease, and Clifford H. McGee and Mary McGee, lessors under this lease, executed an Agreement, dated April, 1962.

4. Paragraph 5 of this Agreement granted the plaintiff the option of extending this lease for a total of not more than one successive period of five years upon the same terms and conditions which were in effect during the original term with the exception that the rent during any such extension was increased by the sum of $25.00 monthly.

5. Paragraph 5 of this Agreement also provided that if the lessee exercised its option to extend the lease for this one further term of five years, the lessee shall give to the lessor written notice of its intention to exercise its extension privilege at least thirty (30) days prior to the expiration of the original term and that the sending of such notice shall constitute the renewal and extension of this lease in accordance with the terms of such renewal option so exercised, without the necessity of the execution of a separate renewal lease.

6. Paragraph 6 of this Agreement also granted to the lessee the right of first refusal to buy the leased premises at the same price, either fixed by the lessor in an offer to sell or in any offer to purchase submitted to the lessor.[3]

7. On April 12, 1962, at the same time as the lease and Agreement were Executed, the parties thereto also executed a Lease Rider which modified Paragraph 6 of the Agreement and provided:

> Lessee shall have, and is hereby given, the option of purchasing said demised premises for the sum of One Hundred Ten Thousand Dollars ($110,000.00), which option may be exercised by Lessee at any time during any extension or renewal of this lease and agreement, but it is understood that the Lessee may not exercise this purchase option during the original trm of the annexed lease ...

8. The first Lease Rider also provides that plaintiff pay any increases in taxes over the $673.00 tax rate in existence in 1962.

9. The plaintiff (lessee) recorded this lease in Middlesex South District Deeds in Book 10081, Page 092.

10. The American Oil Company, acting

---

[3]In the original Lease Agreement the first portion of Paragraph 6 was deleted, but thereafter follows the following language:

It is further agreed that should Lessor, or Lessor's heirs, executors, grantees, successors or assigns, at any time during the term of this lease or any extension thereof, receive an offer to purchase the demised premises, or any part thereof, or any premises which includes the demised premises, and desires to accept said offer, or should Lessor during any such time make an offer to sell the demised premises, or any part thereof, or any premises which includes the demised premises, Lessor shall give Lessee ninety (90) days notice in writing of such offer, setting forth the name and address of the proposed purchaser, the amount of the proposed purchase price, and all other terms and conditions of such offer, and Lessee shall have the first option to purchase the premises which are the subject of the offer by giving written notice to Lessor of its intention to purchase within said ninety (90) day period, at the same price and on the same terms of any such offer, being understood that in the event Lessee does not give notice of its intention to exercise said option to purchase within said period, this Lease and all of its terms and conditions shall nevertheless remain in full force and effect and Lessor and any purchaser or purchasers of the demised premises, or any part thereof, or any premises which include the demised premises, shall be bound thereby, and in the event that the premises set forth in the offer are not sold for any reason, Lessee shall have, upon the same conditions and notice, the continuing first option to purchase the demised premises, or any part thereof, or any premises which include the demised premises upon the terms of any subsequent offer or offers to purchase.

under said lease, has operated an automobile service station on the lease premises from 1962 to date.

11. The plaintiff exercised its option to extend the term of the lease for a further period of five (5) years, commencing October 1, 1977, by a letter to the successor lessor, dated December 9, 1976.

12. The leased premises were conveyed to the defendants (Paul A. London and Sheldon Jaffe) by deed, dated January 18, 1977, and recorded in Middlesex South District Deeds, Book 13128, Page 194. In that deed, it was expressly stated that the conveyance was subject to "an agreement, dated April, 1962 and lease dated April 12, 1962 and two lease riders also both dated April 12, 1962, all between Clifford H. McGee and Mary McGee (Mary C. McGee), his wife, and The American Oil Company." At the same time the successor lessor assigned to the defendants all their right, title and interest in the 1962 lease, Agreement and Lease Riders.

13. The purchase price paid by the defendants for the property on January 18, 1977 was Ninety Thousand Dollars ($90,000.00).

14. The plaintiff thereafter and up to the present time has made its monthly rental payments to the defendants.

15. By letter dated August 30, 1980, the defendants, pursuant to Paragraph 6 of the Agreement dated April, 1962, notified the plaintiff that they had received an offer to buy the leased premises from Friend Building Center of Burlington, Inc. ("FBC") for the sum of Three Hundred Fifty Thousand Dollars ($350,000.00).

16. The defendant, Paul A. London, was and is the President and a director of FBC and the defendant, Sheldon Jaffee, was and is the Treasurer and a director of the same corporation, both on August 30, 1980, and at the present time.

17. Defendant Sheldon Jaffee owns five percent (5%) of all issued and outstanding shares of stock in FBC and defendant Paul A. London owns fifty percent (50%) of all issued and outstanding shares of stock in FBC.

18. Mark Jaffee owns forty-five percent (45%) of all issued and outstanding shares of stock in FBC. Mark Jaffee is the Vice-President of FBC. Mark Jaffee has no ownership interest whatsoever in the disputed property.

19. FBC operates a retail building supply store adjoining the property in dispute.

20. I find the $350,000.00 offer to be in good faith.

21. By letter dated October 9, 1980, the plaintiff notified the defendants as successor lessees, of the plaintiff's exercise of its option to purchase the leased premises for the sum of $110,000.00 in accordance with the provisions of Paragraph 21 of the Lease Rider, dated April 12, 1962.

22. By letter dated November 14, 1980, the defendants, by their attorney, notified the plaintiff that the plaintiff's option to purchase, set forth in Paragraph 21 of the Lease Rider had been extinguished and was of no force and effect and that the plaintiff's only remaining purchase right was the right of first refusal provided for in Paragraph 6 of the original lease.

23. The parties also stipulated, Exhibit 15, that the documents involved in this controversy were standard forms prepared by plaintiff and used by plaintiff in similar situations.

## CONTENTIONS OF THE PARTIES

The issue presented for decision here is whether dual purchase options, the option to purchase at a fixed price and the right of first refusal,[4] when construed together, create an ambiguity in the lease which required their construction to be against the plaintiff who prepared the lease.

---

[4]The term "right of first refusal" refers to the option in Paragraph 6 which gives the lessee the option to match any outstanding offers to purchase the property.

The defendants contend that the structure of the lease gives priority to the owner's right to sell the property to the highest bidder and Amoco's right to match the highest offer received by the owners from any third party. To achieve this construction, the defendants contend that the dual purchase options cannot be exercised simultaneously without, in effect, giving priority to the fixed price option. They reason that the fixed price option places a ceiling on amount for which property cold be sold during the original lease term because no one would be willing to purchase the property for more than the fixed price, since during the lease extension Amoco had the option to purchase the property for the fixed price. The defendants would construe the contract to permit the fixed price option to be exercised only when no offer is currently outstanding on the property, but once the lessor receives a bona fide offer from a third party, the lessee is restricted to the first refusal option and must then either meet the tendered price for the property or relinquish all its purchase rights. The effect of the defendant's interpretation would be to limit the plaintiff to the exercise of its right of first refusal, i.e., to meet the outstanding offer of $350,000.00.

In contrast, the plaintiff contends that the dual purchase options can be rationally read together because Paragraph 6 and Paragraph 13 of the lease preserve the fixed price option even when the lessee elects not to exercise its first refusal option. Plaintiff construes Paragraph 6 to modify and qualify the first refusal option by explicitly stating that all the terms and conditions of the lease agreement remain in full force and effect in the event that the first refusal option is not exercised. Paragraph 13 states that the lease provisions bind the lessor and any future purchaser. Therefore, plaintiff argues, the fixed price purchase option is not extinguished by Amoco's election not to exercise its right to purchase under the first refusal option and the property must be conveyed to plaintiff for the fixed price of $110,000.00.

## RULINGS OF LAW

### 1. Interpretation of the Contract.

The Court should be guided predominantly by the plain words of a written contract and consider evidence of surrounding circumstances only when there is some ambiguity apparent from an examination of the contract. See, e.g., **Ober v. National Casualty Co.,** 318 Mass. 27, 30 (1945); **Beal v. Stimpson Terminal Co.,** 1 Mass. App. Ct. 656, 659 (1974); **Fried v. Fried,** 5 Mass. App. Ct. 660, 663 (1977). The intent of the parties must be determined from a fair construction of the contract as a whole without giving special emphasis to any one part. **Ucello v. Cosentino,** 354 Mass. 48, 51 (1968). The role of the court is not to rewrite the terms but to give effect to the plain words of the contract when possible. See, **Governor Apartments, Inc. v. Carney,** 342 Mass. 351, 354 (1961).

Relying on these settled principles of contract construction, the court must first look to the explicit language of the lease. There is no ambiguity created when the dual purchase options are read together where the fixed price option is not limited by the language of the lease but rather is preserved by the language of Paragraph 6 and Paragraph 13.

Paragraph 6 of the Agreement states in relevant part:

> "... it being understood that in the event Lessee does not give notice of its intention to exercise said option (right of first refusal) to purchase within said period, this lease and all its terms and conditions shall nevertheless remain in full force and effect and Lessor and any purchaser or purchasers of the demised premises ... shall be bound thereby ..."

Paragraph 13 of the Agreement reiterates that the terms and conditions of the lease extend to subsequent purchasers as follows:

"Lessor covenants that no conveyance, assignment by or other change of interest of Lessor in the premises hereby demised ... shall ... affect this lease or the renewal or purchase option rights of the lessee hereunder."

The effect of these two provisions is to explicitly provide that the fixed price option remains in effect when the lessee elects not to exercise its right of first refusal.

The defendants cite authority from Connecticut, Michigan, Indiana and Vermont[5] striking down dual purchase options. Several of the cases construed leases which lacked the preservation language of Paragraph 6 and 13 present in the instant lease. The Court in **Conroy v. Amoco Oil Company**, 374 So.2d 561, 563-566 (Florida App. 1979), aptly distinguished these cases. In **Amoco Oil Co. v. Kraft**, 80 Mich. App. 270, 280 N.W.2d 505 (1979), the Court states that there is

"...nothing in the contract to show that the parties intended to make the first refusal option dependent on the fixed price option or to fix a ceiling price on the value of the leasehold."

On the contrary, the very purpose of executing a contract could easily have been to fix such a ceiling on the price during the lease period as part of the bargained-for exchange. In fact, the obvious purpose of the preservation language of Paragraphs 6 and 13 could have been to make the first refusal option subordinate to the fixed price option. See, e.g., **Crowley v. Texaco, Inc.**, S.D., 306 N.W.2d 871 (1981); **American Oil Co. v. Ross**, 390 So.2d 90 (Florida App. 1980); **Conroy v. Amoco Oil Co., supra.** While there is no Massachusetts authority directly on point,[6] the weight of more recently decided cases supports the plaintiff's position here.

**Unconscionability.**

Defendants also raised the claim that the contract was unconscionable due to the unequal bargaining power of the parties, Amoco's failure to clearly draft the Lease Agreement, and the unreasonable allocation of risks in favor of Amoco.

Plaintiff counters that the original bargain for the lease was fair; the lessor was protected during the lease by a guaranteed rental income in exchange for the fixed price option that was not to take effect for 15 years and the right of first refusal during the life of the contract.

Initially, the question arises whether defendants have standing to challenge the lease as unconscionable where they chose to buy the land, with full notice of all the terms and conditions of the lease. Even if the defendants have standing to raise this claim, however, there is no evidence before the Court that this contract was unconscionable at the time it was made.

Whether a contract is unconscionable is tested at the time of execution of the contract. Cf. **Zapatna v. Dairy Mart, Inc.**, 1980 Mass. Adv. Sh. 1837, 1841; G.L. c. 106, sec. 2-302(1). Therefore, the fact that $350,000.00 may be fair market value at present is not dispositive and the

---

[5]See, e.g., **Texas v. Rogow**, 150 Conn. 401, 190 A.2d 48 (1963); **Amoco Oil Company v. Kraft**, 89 Mich. App. 270, 280 N.W.2d 505 (1979); **Tarrant v. Self**, Ind. App., 387 N.E.2d 1349 (1979); **Shelley Oil Company v. Jolley**, 130 Vt. 482, 296 A.2d 236 (1971). See also 8 A.L.R. 2d 604.

[6]In **American Oil Co. v. Cherubini**, 351 Mass. 581, 584-585 (1967), the Court construed dual purchase options where the lessee exercised its fixed price option before receiving notice of a third party offer. In the instant case, however, the lessee received notice of a third party offer before exercise of its fixed price option. Following the reasoning of this case then, if the lessors merely waited until the expiration of the lease without receiving any third party offers, the lessee clearly would have had the right to exercise its fixed price option for $110,000.00, regardless of the value of the property.

question is whether $110,000.00 was a fair price to the parties looking 15 years in the future. Given the highly speculative nature of real estate valuations, the court is loath to judge the fairness of the price by 1962 standards looking 15 years in the future. "The law is not concerned with the adequacy of the consideration as long as it is 'valuable'." **Filoon Co. v. Whittaker Corp.**, 1981 Mass. App. Ct. Adv. Sh. 1586. It should be kept in mind that few if any people are able accurately to predict the market in any commodity as far downstream as 15-20 years.

It can also be argued that plaintiff was in a position where it could only win, never lose, since it could always match another offer under its first refusal option, and could undercut it with its fixed price option, if the market went over the fixed price. However, this could be said about any option, since it always leaves the sole power to implement it in the hands of the option holder, who likely would exercise it only when the market went over the option figure. It is undoubtedly for this reason that options are construed strictly, but are nevertheless enforced. See, **Stoico, Inc. v. Colonial Development Corp.**, 360 Mass. 898, 902 (1976); **Westinghouse Broadcasting v. New England Patriots Football Club**, 1980 Mass. App. Ct. Adv. Sh. 1165, 1168.

In this case it should be kept in mind that defendants (more accurately, they and their predecessors) retained the exclusive right for 15 years to force a sale either to plaintiff or another bona fide offeror, but enjoyed the guaranteed continuing rent from plaintiff. Defendants held the sole power to thus end the tenancy. Only during the 5 years of the extension did plaintiff have the stronger hand to either match an offer, or exercise its fixed price option.

It seems to this Court that it was perfectly forseeable that at the end of 15 years the market price might well exceed the fixed price option. The remedy of defendants (and their predecessors) was to set a sufficiently high fixed price option so that they were willing to accept the risk of taking a loss. In 1962, the original parties may have negotiated the amount of the monthly rental to offset the fixed price option.

In any event, there is nothing to show that the parties were not of equal intelligence, foresight and bargaining power in connection with the negotiation of the options in this lease. To read in an implied term negating the fixed price option, after the failure to exercise the first refusal, seems to this Court to be unwarranted retrospective renegotiation of a contract which on its face seems rational and sensible.

### ORDER FOR JUDGMENT

Judgment should enter ordering defendants to convey the locus to plaintiff on the payment of $110,000.00 in accordance with the Agreements, Lease and Riders.

The court declares that defendants may not convey the land or the locus to anyone other than plaintiff.

**Robert J. Hallisey**
**Justice of the Superior Court**