Curran, Dennis J., J.
Ms. Rita Cannistraro, Trustee of the Metro Really Trust, has sued QD Vision, Inc. as a third-party defendant for: (1) indemnification for any loss or damage resulting from the injury of one of QD Vision’s employees, Mr. Peter Fowler, on property Metro Really leased to QD Vision; and (2) breach of contract for failing to obtain additional insured coverage for Metro Realty as required under the lease agreement between the parties.
QD Vision has filed a motion for summary judgment which asserts that: (1) the indemnification provision in the lease agreement between the parties does not apply in this case; and (2) the lease agreement was ambiguous as to the additional insured coverage QD Vision was required to buy for Metro Realty, and no damages resulted from any alleged breach.
After a hearing and review of the summary judgment record, the third-party defendant QD Vision, Inc.’s motion for summary judgment must be DENIED for the following reasons.
BACKGROUND
The summary judgment record reveals the following undisputed facts.
On Monday, June 30,2008, Peter Fowler was trying to enter the building at 313 Pleasant Street, Water-town, Massachusetts. The building had several exterior entrances. These entrances were locked during certain hours, and had to be unlocked by using a magnetic card reader system. Mr. Fowler claims that when he swiped his access card, the light on the card reader turned green and he pulled hard on the door, but it did not open. He repeated this process twice more and on the third pull of the door, injured himself.
QD Vision, Mr. Fowler’s employer, was a tenant in the building at 313 Pleasant Street by lease agreement with Metro Really. The lease agreement between Metro Realty and QD Vision originally defined the premises as:
The western portion of the fourth floor of the building at 313 Pleasant Street, Watertown, MA, comprising approximately 8,200 rentable sq. ft. (including walls and attributable building common areas). See Rider 28D for Parking. Together with the right to use in common, with others entitled thereto, the hallways, stairways and elevators necessary for access to said leased premises, and lavatories nearest thereto.
A lease amendment dated July 1, 2005, stated that effective June 1, 2008, “the leased premises shall be expanded to include the western portion of the second floor, comprising approx. 6,665 rentable sq. ft. (“the Expansion Premises”), for a total of 14,865 rentable sq. ft.” Also included in the lease agreement is an indemnity provision that reads:
16. The LESSEE shall save the LESSOR harmless from all loss and damage occasioned by anything occurring on the leased premises unless caused by the negligence or misconduct of the LESSOR, and from all loss and damage wherever occurring occasioned by any omission, fault, neglect or other misconduct of the LESSEE. The removal of snow and ice from the sidewalks bordering upon the leased premises shall be Lessor’s responsibility.
The lease also included the following insurance provision:
The LESSEE shall maintain with respect to the leased premises and the property of which the leased premises are a part commercial general liability insurance with limits of $1,000,000 each occurrence and $2,000,000 aggregate, in responsi *110 ble companies licensed to do business in Massachusetts, and with an A.M. Best rating of at least A-VII. The LESSOR shall be named as additional insured per form CG 2010 or its equivalent. The LESSEE shall deposit with the LESSOR certificates for such insurance at or prior to the commencement of the term, and thereafter within thirty (30) days prior to the expiration of any such policies.
DISCUSSION
I. Standard of Review
A motion for summary judgment will be granted where, viewing the evidence in the light most favorable to the non-moving party, all material facts have been established, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cabot Corp. v. AVXCorp., 448 Mass. 629, 636-37 (2007). The party moving for summary judgment has the burden to show that there is no genuine issue of material fact on every relevant' issue even if they were to have no burden on that issué if the case were to go to trial. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy their burden of demonstrating the absence of a triable issue either by submitting evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of the case at trial. Pettrell v. Shaw, 453 Mass. 377, 381 (2009). Once the moving party establishes the absence of a triable issue, the parly opposing the motion must respond and allege specific facts establishing the existence of a genuine dispute of material fact. Pederson v. Time, Inc., 404 Mass, at 17.
II. Indemnify Claim
Ms. Cannistraro claims that the lease agreement between Metro Realty and QD Vision requires QD Vision to indemnify Metro Realty, for any losses suffered as a result of negligence. QD Vision has moved for summary judgment on this claim, arguing that the indemnity provision in the lease agreement is inapplicable because it does not cover losses that occur in a common area of the building and because the second half of the indemnity provision is rendered invalid by statute.
As with any general contract term, indemnity provisions are not read with any bias toward either the indemnitor or the indemnitee and should be fairly and reasonably construed to ascertain the intention of the parties and the purpose sought to be accomplished. Shea v. Bay State Gas Co., 383 Mass. 218, 222 (1981). The indemnity provision in the lease agreement at issue here states:
16. The LESSEE shall save the LESSOR harmless from [1] all loss and damage occasioned by anything occurring on the leased premises unless caused by the negligence or misconduct of the LESSOR, and [2] from all loss and damage wherever occurring occasioned by any omission, fault, neglect or other misconduct of the LESSEE. The removal of snow and ice from the sidewalks bordering upon the leased premises shall be Lessor’s responsibility. (Bracketed numbers added.)
A contract provision should be interpreted in accordance with its plain meaning when it is free from ambiguity. Southern Union Co. u. Dept, of Pub. Util., 458 Mass. 812, 820 (2011). Several questions then arise: whether this clause is triggered in the present case, whether the injury to Mr. Fowler occurred on the premises and whether Metro Realty caused it. The causation issue is obviously reserved for the fact-finder at trial, so the relevant issue for this motion is whether the incident occurred on the premises, QD Vision incorrectly argues that the injury that gave rise to this case did not occur on the leased premises because it occurred at the building entrance in a common area. The lease defines “premises” as:
The western portion of the fourth floor of the building at 313 Pleasant Street, Watertown, MA, comprising approximately 8,200 rentable sq. ft. (including walls and attributable building common areas). See Rider 28D for Parking. Together with the right to use in common, with others entitled thereto, the hallways, stairways and elevators necessary for access to said leased premises, and lavatories nearest thereto.[1]
The first clause of this indemnify provision unambiguously applies to any loss occurring on the premises unless caused by the lessor. Since the entrance to the building is clearly an attributable common area and is used to access QD Vision’s office space, the injury and any loss associated with it occurred “on the premises.” Thus, the claim under this first clause could be triggered depending on a factual finding at trial as to which party was negligent in causing the injury.
QD Vision argues that the second part of the indemnification clause is invalidated by statute. G.L.c. 186, §15 prohibits a landlord from absolving itself from liability for its own negligence as void against public policy. It is well-settled that this statute can apply to indemnify provisions in commercial leases because the purpose of the statute is to preclude a landlord from shifting responsibility for its own negligence to its tenant. Noifolk & Dedham Mut. Fire Ins. Co. v. Morrison, 456 Mass. 463, 467-69 (2010).
Both parties agree that the entrance to the building would be covered by the statute; however, the indemnify provision does not attempt to indemnify Metro Realty from liability arising from its own negligence; rather, it attempts to indemnify itself from liability arising from the lessee, QD Vision’s omission, fault, neglect or other misconduct. Thus, this provision does not violate G.L.c. 186, § 15 because it is not an attempt to hold the lessor harmless.
As with the first clause of the indemnify provision, the key issue as to its application is which party was *111 negligent or at fault for Mr. Fowler’s injury. If QD Vision is found to be negligent at trial with no contributing negligence on the part of Metro Realty, then the indemnily provision would be triggered and QD Vision would have a contractual obligation to compensate Metro Realty for any loss or damage suffered. Since this is an issue of material fact to be determined at trial, summary judgment on this claim is not appropriate, and must be denied.
III. Breach of Contract Claim
The second claim of the third-party complaint is for breach of contract of a lease provision that allegedly requires QD Vision to maintain general liability coverage which should have named Metro Realty as an additional insured. QD Vision has moved for summary judgment on this claim; however, there is a genuine issue of material fact as to the intent of the parties in forming the lease agreement that precludes summary judgment.
The relevant provision in the lease is as follows:
The LESSEE shall maintain with respect to the leased premises and the property of which the leased premises are a part commercial general liability insurance with limits of $1,000,000 each occurrence and $2,000,000 aggregate, in responsible companies licensed to do business in Massachusetts, and with an A.M. Best rating of at least A-VII. The LESSOR shall be named as additional insured per form CG 2010 or its equivalent. The LESSEE shall deposit with the LESSOR certificates for such insurance at or prior to the commencement of the term, and thereafter within thirty (30) days prior to the expiration of any such policies.
While it appears initially that this provision requires QD Vision to provide coverage for Metro Realty as an additional insured, the issue arises due to the ambiguity in the phrase “The LESSOR shall be named as additional insured per form CG 2010 or its equivalent.” QD Vision claims that this provision does not apply to it because form CG 2010 refers to a standard endorsement that is used to provide coverage for claims arising out of on-going work performed by the named insured for the additional insured. It is a form most commonly used by contractors and sub-contractors that does not apply in a landlord-tenant relationship because no work is being performed by the lessee for the lessor. QD Vision argues that they performed no work for Metro Really and any insurance obtained through form CG 2010 or its equivalent would be inapplicable in the context of Mr. Fowler’s injury and this litigation. Therefore, even if the contract has been breached, Metro Realty has not suffered damages as a result of the breach.
By contrast, Metro Really argues that it was clear to both parties at the time the contract was signed that they were entering a landlord-tenant relationship and that the language “or its equivalent” should be reasonably read to refer to similar additional insured coverage in the landlord-tenant context. Generally, in a case of contract ambiguity, any ambiguity in the form lease should be construed against the drafter of the agreement. Beal v. Stimpson Terminal Co., 1 Mass.App.Ct. 656, 660 (1974). Here, QD Vision argues that the ambiguity should be read against Metro Realty because it drafted the lease. However, for this rule to be triggered, the alternative interpretation placed upon the ambiguity by the contractor must be reasonable and practiced under all the circumstances. Shea v. Bay State Gas Co., 383 Mass. at 225.
If this Court were to accept QD Vision’s interpretation of the insurance provision, it would essentially render that provision meaningless. By any view, both parties were clearly aware they were entering a landlord-tenant relationship and that QD Vision would not be performing any work on behalf of Metro Really that would require additional insurance of the type QD Vision presently argues the contract requires. Because this Court finds that the language of the contract has terms that are ambiguous, uncertain, or equivocal in meaning, the intent of the parties is a question of fact to be determined at trial. Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002). The questions of whether the insurance provision applies based on the parties’ intent and whether the contract has been breached as a result present questions of fact to be determined at trial; thus, summaiyjüdgment on the second claim of the third-party complaint must be denied.
ORDER
For these reasons, the third-party defendant QD Vision, Inc.’s motion for summary judgment must be DENIED.

The lease agreement was later amended to expand the leased premises to include the western portion of the second floor, though this amendment did not strike or override any of the original language which defines the premises.