ROBERTS-NEUSTADTER FURS, INC. vs. ALYCE B. SIMON & others[1], trustees.

Suffolk.   October 26, 1983. — December 20, 1983.

Present: GREANEY, CUTTER, & WARNER, JJ.

*Option.   Contract,* Option, For sale of real estate, Performance and breach. *Notice.   Landlord and Tenant,* Option to purchase. *Jurisdiction,* Specific performance.

A judgment dismissing the plaintiff's complaint seeking specific performance of an option agreement, which, in effect, also disposed of the defendant's counterclaim for damages, adjudicated all claims before the court and constituted a final judgment for purposes of appeal. [264]

Under a lease granting the lessee an option to purchase the demised premises "during the initial 5-year term of this lease," and providing that the option was "exercisable by notice in writing stating the date on which title shall pass" and that the date specified by the lessee for passage of title "be [not] less than sixty (60) days nor more than ninety (90) days from the date of the giving of . . . notice," an exercise of the option by the lessee on the last day of the five-year term and in strict compliance with its terms created a bilateral purchase and sale contract which was to be performed on a certain date which had been selected by the lessee in keeping with the option's requirements. [264-269]

Although the plaintiff in an action for specific performance of an option agreement exercised the option in a timely manner and in strict compliance with its terms, a summary judgment granting it relief could not be entered where the record disclosed disputed questions of material fact with respect to whether specific performance would be inequitable. [270-271]

CIVIL ACTION commenced in the Superior Court Department on May 6, 1981.

[1] M. Gordon Erlich and Gary Simon. The defendants are trustees of the Copley Investments trust.

The case was heard by *Mitchell*, J., on a motion for summary judgment.

*David A. Mills* for the plaintiff.

*M. Robert Dushman* for the defendants.

GREANEY, J. The plaintiff (lessee) brought this action in the Superior Court seeking specific performance by the defendants (lessors) of an option agreement in the parties' lease. This option required, upon proper exercise by the plaintiff, that the defendants convey the property containing the leased premises. The defendants answered and counterclaimed. On cross motions for summary judgment under Mass.R.Civ.P. 56, 365 Mass. 824 (1974), a judge of the Superior Court granted the defendants' motion and denied the plaintiff's motion. The plaintiff has appealed from the judgment dismissing its complaint. We reverse.

The pertinent facts are not in dispute. On March 15, 1975, the plaintiff leased, from the defendants' predecessor in title, for a five-year term, storefront premises at 69 Newbury Street in Boston. The lease contained the following option to purchase: "At any time during the initial 5-year term of this lease, lessee shall have the option to purchase the land and building of which the demised premises are a part. Said option shall be exercisable by notice in writing stating the date on which title shall pass; in no event, however, shall the date specified by lessee for passage of title be less than sixty (60) days nor more than ninety (90) days from the date of the giving of such notice." The purchase price during the final year of the initial term of the lease was set at $290,000.

In January, 1980, the parties commenced negotiating a new lease. After three months of negotiations, a new lease was signed on March 13, 1980 (one day before the termination of the 1975 lease). Immediately thereafter, and before the 1975 lease had expired, the plaintiff notified the defendants by letter that it was "exercis[ing] [its] option to purchase the land and building known and numbered 69 Newbury Street, Boston, Massachusetts, for $290,000." The plaintiff's letter further designated "[t]he time and place

for the delivery of [the] deed transferring title to the property [as] 10:00 o'clock a.m. on June 9, 1980 at the Suffolk Registry of Deeds." At that date and time, the plaintiff's attorney tendered the agreed price to the defendants' attorney and requested a quitclaim deed to the property. Conveyance was refused on the ground that the option had not been properly exercised.

The plaintiff's action for specific performance promptly followed. As indicated, the defendants answered and counterclaimed. In their counterclaim, the defendants asserted that they had expended $25,000 to improve the leased premises in reliance on the plaintiff's conduct in negotiating a new lease, that these expenditures would not have been made had they known that the plaintiff intended to exercise the option, and that they were entitled to reimbursement of the monies spent on improvements "[s]hould a judgment enter directing that the property . . . be transferred to [the] plaintiff." In granting summary judgment for the defendants the judge appears to have adopted the defendants' argument that the terms of the option required that the plaintiff both give written notice of intent to exercise the option and complete the convenyance prior to the termination of the initial five-year term of the lease.

1. There is no problem with the finality of the judgment under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). The defendants' counterclaim was expressly conditioned on the plaintiff's being granted specific performance. Since the defendants' interpretation of the language of the option was accepted by the judge, it was unnecessary to decide the counterclaim. The judgment therefore effectively adjudicated all the claims before the court and could be immediately appealed by the plaintiff. See generally *Howze* v. *Arrow Transp. Co.,* 280 F.2d 403, 404-405 (5th Cir.), cert. denied, 364 U.S. 920 (1960); *Luithle* v. *Taverna,* 214 N.W.2d 117, 119-121 (N.D. 1973).

2. The manner in which an option may be exercised is to be determined by the language of the option provision. See Williston, Contracts § 61D (3d ed. 1957); 1A Corbin, Con-

tracts § 264, at 523 (1963). If the option is effectively exercised it ripens into a bilateral purchase and sale contract which is binding on both parties and can be enforced by specific performance. *Cities Serv. Oil Co.* v. *National Shawmut Bank,* 342 Mass. 108, 110-111 (1961). *American Oil Co.* v. *Cherubini,* 351 Mass. 581, 585 (1967).

For present purposes it is useful to contrast (a) options which require purchase within a specified period of time but make no reference to notice as a means of exercising the option with (b) options which expressly state that the lessee can exercise the option by giving written notice to the lessor. See generally Annot., 71 A.L.R. 3d 1201 (1976); Annot. 87 A.L.R. 3d 805 (1978). In the former situation, it is the rule in Massachusetts that "acceptance [of the option] can be only by tender of the specified price. Notice of intention of exercise, without tender of payment, does not bind the owner to convey. *Hunt* v. *Bassett,* 269 Mass. 298, 302 [1929]. See *Mayer* v. *Boston Metropolitan Airport, Inc.,* 355 Mass. 344, 353-354 [1969]." *Hurd* v. *Cormier,* 358 Mass. 736, 738 (1971). In the latter situation, exercise of the option is simply a matter of giving written notice in the manner and within the time period specified by the option. See e.g. *Cities Service Oil Co.* v. *National Shawmut Bank, supra; C. & W. Dyeing & Cleaning Co.* v. *DeQuattro,* 344 Mass. 739 (1962); *American Oil Co.* v. *Cherubini, supra.* We think the instant case falls within the second category of purchase options. An examination of the last three decisions cited supports this conclusion.

In the *Cities Service* case, 342 Mass. at 109, the lease provided that "Tenant shall have the option during the term of this lease or any extension or renewal thereof to purchase [the leased premises] . . . for the sum of . . . $17,000 . . . payable as follows . . . $200.00 on notice of intention to exercise this option . . . [the option to] be exercised by the Tenant giving to the landlord written notice of its intention to purchase." The lease was for a ten-year period ending on August 31, 1959. The lessee attempted to exercise this option, on August 31, 1959, by mailing a letter to the lessor

accompanied by a draft for $200. The letter was not received by the lessor until September 1, 1959. The lessor returned the draft with a letter stating that the option had not been exercised as required by the lease because, among other things, "the draft was not legal tender and not the payment required."

In concluding that the option had not been timely exercised, the court observed (at 110-111), that "[t]he lease sets out the agreement that in the event of prescribed action *during the term of the lease* there would arise a bilateral contract of purchase and sale. The conditions for this contract arising are the giving of notice and the payment of $200 'on notice of intention to exercise this option'" (emphasis original). The court focused on the requirement that $200 accompany the notice of exercise of the option, construing this condition as mandating payment in legal tender prior to the expiration of the lease. Applying the settled rule that "time is of the essence of an option," *Bickford* v. *Dillon,* 321 Mass. 82, 84 (1947), and cases cited; *Bucciero* v. *Drinkwater,* 13 Mass. App. Ct. 551 (1982), the court in *Cities Service* held (at 111) that the lessee had not satisfied the terms of the option because payment by means of legal tender had not been made "so as to be received before the expiration of the lease." The decision implies, however, that if the conditions of the agreement had been seasonably met, the option would have been properly exercised despite the fact that both the balance of the payment and the conveyance of title would have occurred after the expiration date of the lease.

In the *C. & W. Dyeing & Cleaning* case, 344 Mass. at 740, the lease provided that "if the Lessee within five years from the commencement of the term hereby created [i.e. on or before August 31, 1959] should give to the Lessor two months notice in writing that he desires to purchase the premises . . . for the sum of $23,000.00, the Lessor on or before the expiration of such notice will convey . . . the demised premises to the Lessee." The required notice was given by the lessee on June 24, 1959. The lessee, however,

was unable to raise the down payment required on the purchase price before September 1, 1959, the date subsequently agreed to by the parties for conveyance. In analyzing the option language, the court determined (at 741) that "[b]y its letter of June 24, 1959, the plaintiff [lessee] complied with the conditions of, and duly accepted, the defendant's offer. Thereupon there came into effect a bilateral contract between the plaintiff and the defendant for the purchase and sale of the premises." It was held, however (at 742), after the consideration of parol evidence to clarify an ambiguity as to the intended date of closing, that the plaintiff could not enforce the agreement because it was not prepared, as required by the language of the lease, to pay the purchase price on or before September 1. The decision distinguishes (at 741-742) between the effective exercise of the option on the one hand (which was here accomplished), and the timely completion of the resulting purchase and sale agreement on the other hand (which was not accomplished due to the fault of the lessee).

In the *American Oil Co.* case, 351 Mass. at 582-583, the lessee was given "the right and option to purchase the demised premises . . . at any time during the term of this lease, or any renewal period, [for $20,000] . . . by [sending] written notice to lessor . . . settlement of the purchase price, and conveyance of the property to lessee, shall be made within sixty (60) days from the date of the sending of such notice exercising said option." The lease also provided the lessee with the right to match any offer to purchase the property made to the lessor by a third party. During the renewed term of the lease, the lessee sent the lessor notice that it was exercising its option to purchase the property for $20,000. At the time of receipt of the lessee's notice, the lessor had received from a third party an offer to purchase the property for a higher price. Contrary to the terms of the lease, the lessor did not disclose this offer to the lessee and conveyed the property to the third party. When specific performance was sought by the lessee, the lessor claimed that the option had not been effectively exercised because

no tender of the purchase price had been made with the notice of exercise. The court rejected the lessor's contention stating (at 585): "It is clear . . . from the terms of the lease that the option could be exercised by sending notice to [the lessor] at her address. The obligation of the plaintiff to pay the purchase price and the obligation of the defendant . . . to convey the premises by deed were 'concurrent and mutually dependent' . . . . Furthermore, the option provided that settlement of the purchase price was to be made within sixty days of the exercise of the option . . . . The plaintiff was not required to make a tender of payment to entitle it to performance of the contract."

In the instant case, the lease provides that the "option shall be exercisable by notice in writing stating the date on which title shall pass." The option also contains two time limitations. The first such limitation appears in the first sentence of the option and confers upon the plaintiff the option to purchase "[a]t any time during the initial 5-year term of the lease." This straightforward language limits only the time within which the plaintiff must exercise the option. The limitation contains no condition, as did the option in the *C. & W. Dyeing & Cleaning* case, 344 Mass. at 740, requiring tender of performance prior to the expiration of the initial lease term.[2]

The second time limitation accompanies the method prescribed for exercise of the option and requires that the date specified by the plaintiff for passage of title "be [not] less than sixty (60) days nor more than ninety (90) days from the

---

[2] The defendant's reliance on the *C. & W. Dyeing & Cleaning* decision for the proposition that the plaintiff must both give notice of intent to exercise the option and complete the conveyance prior to the termination of the lease period is misplaced. While the court in the *C. & W. Dyeing & Cleaning* case interpreted the option (at 742) as requiring that "the contract of purchase and sale . . . be consummated not later than five years from the commencement of the term of the lease, i.e., not later than September 1, 1959," it based this interpretation, in part, on evidence of the parties' conduct, since the option language was ambiguous and could reasonably be interpreted in this manner. This is in sharp contrast to the present case where the option language is unambiguous and cannot reasonably be interpreted as requiring the closing by the end of the lease term.

date of the giving of . . . notice [of the option's exercise]."
This limitation simply establishes a time frame for closing,
which probably takes into account the parties' needs to at-
tend to the usual details of a closing of this sort, such as
searching the title, arranging financing, reviewing leases,
notifying other tenants that the building has been sold,
preparing adjustments, etc. In this respect, the option par-
allels the option in the *American Oil Co.* case, 351 Mass. at
582-583, which differentiated between the effective exercise
of the option and, subsequent to that, the consummation of
the closing. There is nothing in this second limitation
which calls for a closing by the end of the lease term.[3]

In light of our analysis of the cases, we think it inescap-
able that the disputed language afforded the lessee the right
to exercise the option to purchase by giving notice right up
to the last day of the five-year term. As matter of law, the
plaintiff reasonably exercised the option in strict compliance
with its terms. See *Westinghouse Broadcasting, Inc.* v.
*New England Patriots Football Club, Inc.,* 10 Mass. App.
Ct. 70, 73 (1980). The plaintiff's timely exercise of its rights
created a bilateral purchase and sale contract which was to
be performed on June 9, 1980, a date selected in keeping
with the option's requirements.[4]

---

[3] Indeed, if the defendants had intended that conveyance as well as ex-
ercise of the option take place before termination of the lease, they could
easily have inserted language to that effect in the text of the option. Com-
pare *Mayer* v. *Boston Metropolitan Airport, Inc.,* 355 Mass. at 351
(agreement expressly states that conveyance is to take place during the op-
tion period). The omission of such a provision in this written lease pro-
vides an additional indication that there was no such requirement. See
*Snider* v. *Deban,* 249 Mass. 59, 65 (1924); *Stop & Shop, Inc.* v. *Ganem,*
347 Mass. 697, 701 (1964). We note the existence of language in the
original lease precisely limiting the period within which the plaintiff
could exercise an option to "three (3) months prior to the expiration of the
original 5-year term." This language also suggests that the option to pur-
chase does not require both notice and conveyance to occur prior to the
termination of the original lease period.

[4] These conclusions obviate the need to discuss at length the defendants'
various arguments in support of the interpretation of the lease adopted by
the judge. Since we have determined that the option language has an
ascertainable meaning, it would not be appropriate to introduce parol

3.  If this were all that the case involved, the plaintiff would be entitled to specific performance.  There remains, however, the defendants' contention that the plaintiff strung them along in negotiating a new lease causing the expenditure of a considerable amount of money for improvements and other expenses.  Based upon the plaintiff's conduct, the defendants urge that specific performance should be refused.

"A judge has a 'reasonable range' of discretion to grant or deny specific performance." *Kaplan* v. *Bessette,* 357 Mass. 233, 235 (1970), quoting *Raynor* v. *Russell,* 353 Mass. 366, 367 (1967).  It can be refused if granting it "will result in imposing an undue hardship upon one party to an agreement or permit the other party to obtain an inequitable advantage." *Freedman* v. *Walsh,* 331 Mass. 401, 406 (1954).  A judgment ordering specific performance of an option contract may also "be made conditional upon [the purchaser's] paying the reasonable value of improvements made . . . by reason of some compulsion of law." 1A Corbin, Contracts § 269, at 565 (1963).  *Spadea* v. *Stewart,* 350 Mass. 218, 222 (1966), and cases cited.  Although couched in terms of the plaintiff's payment of damages if specific performance is ordered, the defendant's counterclaim also fairly raises the question whether specific performance ought to be denied because of inequities brought about by the plaintiff's negotiation of a new lease and delay in exercising the option.[5]  Whether the relief sought should, on equitable con-

evidence to explain the option's meaning.  The fact that there could be a two- or three-month hiatus between the end of the lease and the date of closing must be deemed to have been within the contemplation of the parties.  Clearly the plaintiff would be liable for rent (probably at the rate established by the lease) during this period.  The fact that the plaintiff actively negotiated and signed a new lease would not preclude exercise of the option.  Nor would the plaintiff's conduct require refusal of specific performance as matter of equity.  The effect of this conduct will be discussed in more detail in part 3 of this opinion.

[5] This issue was fairly raised by the defendants' affidavits below in support of their motion for summary judgment and has been briefed by them on appeal.  The plaintiff does not dispute that this aspect of the case remains open.

siderations, either be refused or made conditional depends on the resolution of disputed questions of material fact. Until these issues are determined a final judgment cannot be entered. Accordingly, the judgment is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*