ANNE B. LEWIS & others,[1] trustees, vs. GEORGE E. CHASE.

Middlesex. November 10, 1986. — March 20, 1987.

Present: BROWN, CUTTER, & WARNER, JJ.

*Option. Contract,* Option, Sale of real estate. *Landlord and Tenant,* Option to purchase. *Notice. Real Property,* Conveyance, Option.

In an action seeking a declaration of the parties' rights under an option agreement contained in a lease of five parcels of land, the judge did not err in concluding that the option for purchase of the five parcels had been effectively exercised by notice given within the agreed-upon time limitations, and that the lessors' lack of title to one of the parcels, as the result of a scrivener's error, was a defect in title which the lessors had an obligation to remedy. [675-678]

CIVIL ACTION commenced in the Superior Court Department on October 24, 1984.

The case was heard by *Joseph S. Mitchell, Jr., J.,* on a motion for summary judgment.

*Bruce F. Smith (Lisa Renee Schwartz & Edward G. Jager* with him) for the plaintiffs.

*Richard C. Bremer, Jr. (Sumner Silver* with him) for the defendant.

BROWN, J. The plaintiffs, trustees of the Patrick J. Butler Inter Vivos Trust (the 1977 Trust), have appealed from a summary judgment entered in the Superior Court in favor of the defendant, George E. Chase. The action concerns a lease for five parcels of land (1199 Worcester Road) in Framingham and a provision of that lease for the exercise of an option to purchase. Section 4.01 of the lease contains the following language:

---

[1] Mary B. Brassard and Paul E. Brassard.

"Lessor hereby grants to Lessee an option (exercisable upon not less than 30 days nor more than 90 days written notice . . .) to purchase the [d]emised [p]remises . . . at any time during the period commencing on April 30, 1982 and ending on the last day of the extended term."

The following facts are not in dispute. On May 10, 1971, Patrick Butler, Mary P. Butler, and John P. Garrahan, as trustees of the 1960 Butler Trust (the Butler Trust), as lessor, entered into the lease with Jerome K. Chase and John T. Copeland, as lessees. On March 28, 1973, the trustees of the Butler Trust conveyed four of the five parcels of land covered by the lease to Patrick and Mary as tenants in common. The fifth parcel was not so conveyed, apparently as a result of scrivener's error.

In 1974, the lessees assigned all of their rights and obligations under the lease to George Chase. On September 28, 1978, Chase sublet the five parcels of Framingham Chrysler-Plymouth, Inc., and John G. Fashjian. The sublease also grants the sublessee an option to purchase the premises from the lessee (by notifying the lessee, who in turn would be obligated to exercise the option under § 4.01 of the lease to procure the premises). Following Mary's death in May, 1976, her interest in the four parcels was conveyed to Patrick. By deed, dated July 6, 1979, the four parcels were conveyed to the 1977 Trust. Record title to the four parcels remains in the trustees of the 1977 Trust. Record title to the fifth parcel is in the name of the trustees of the Butler Trust, of which Garrahan is the sole remaining trustee. In 1980, the lease was extended for an additional ten years.

On May 9, 1984, Mr. Sumner Silver, the attorney for the sublessees, wrote to Chase to tell him that the sublessees were exercising their option to purchase the property subject to the provisions in the sublease. On May 18, 1984, Chase notified the plaintiffs of his intention to exercise his option to purchase the real estate.

On July 16, 1984, plaintiff's attorney, Mr. Edward G. Jager forwarded to Mr. John P. Burke, attorney for Chase, a draft

of a deed conveying to Chase only four parcels of land. In early August, 1984, Jager received a letter, dated August 2, 1984, from Silver, indicating that Silver's title search showed that the fifth parcel had not been conveyed in 1973 and calling upon the plaintiffs, pursuant to Section 4.07 of the lease,[2] to remedy that title defect. Around the same time, Jager also received a letter, dated July 27, 1984, from Mr. John Hanrahan, as associate of Garrahan, which also set forth the problems with the title and indicated the willingness of Garrahan to cooperate in remedying the title defects.

The plaintiffs never tendered conveyance of all five parcels; Chase never tendered payment to the plaintiffs. Rather, on August 17, 1984, ninety-one days after notice of the exercise of the option, Burke sent a letter reporting to Jager that it was Chase's position that the 1977 Trust's lack of ownership of the fifth parcel was a defect in title susceptible of being remedied and that the plaintiffs had sixty days from August 16, 1984, to remedy the purported defect pursuant to § 4.07 of the lease. On August 22, 1984, Jager replied, informing Burke that the purported defect to which the August 17, 1984, letter referred was not susceptible of being remedied by the trustees of the 1977 Trust, and further indicating that the time for exercise of the option had expired given the failure to tender payment within ninety days after exercise of the option.

On October 24, 1984, the plaintiffs filed a complaint in the Superior Court seeking a declaration that Chase's option had

---

[2] *"Section 4.07 Title*. Promptly after the exercise of this Option, Lessee, at its expense, shall order a title examination of the Demised Premises from an attorney of recognized standing and repute, pursuant to which such attorney shall undertake to certify to Lessee that the Lessor has a good and marketable title to the Demised Premises as contemplated by Section 4.03 hereof. If such title certification discloses defects in title not expressly consented to herein, Lessor shall remedy such defects in title as are susceptible of being remedied, and the Closing Date shall be delayed for such period (not exceeding 60 days) as may be reasonably required to remedy such defects. If Lessor does not so remedy such defects in title, Lessee shall have the option of completing the purchase and accepting such title as Lessor is able to convey without reduction of the purchase price, unless such defects are encumbrances or liens for an ascertainable amount, in which case that amount may be deducted from the purchase price."

expired because of his failure to tender payment within ninety days of his exercise thereof; that his notification to the 1977 Trust of an alleged defect in title purportedly entitling him to an extension of the closing date was untimely; that the alleged defect in title was not actually a defect in title; and that such a defect in title was not susceptible of being remedied by the plaintiffs. The trial judge concluded that the defendant's exercise of his option to purchase was valid and that the lack of ownership was a title defect which the lessors had an obligation to remedy. The judge also ruled that the lessors were not ready, willing, and *able* to convey the property given the lack of ownership of the fifth parcel and ordered the plaintiffs to convey the property to the defendant within ten days of receiving record title to the fifth parcel.

The language of the option provision determines the manner in which an option may be exercised. *Roberts-Neustadter Furs, Inc.* v. *Simon,* 17 Mass. App. Ct. 262, 265 (1983). As an option provision confers a unilateral right to compel performance exclusively for the benefit of the holder, it is to be strictly construed. See *Westinghouse Bdcst. Co.* v. *New England Patriots Football Club, Inc.,* 10 Mass. App. Ct. 70, 73 (1980); *National Medical Care, Inc.* v. *Zigelbaum,* 18 Mass. App. Ct. 570, 576 (1984). Once an option is effectively exercised it ripens into a bilateral purchase and sale contract. *Roberts-Neustadter Furs, Inc.* v. *Simon,* 17 Mass. App. Ct. at 265.

Where the option to purchase real estate expressly provides for the giving of notice to the lessor, effective exercise of the option requires the giving of notice in the manner and within the time period specified by the contract. *Ibid.* See *American Oil Co.* v. *Cherubini,* 351 Mass. 581, 585 (1967). Contrast *Hurd* v. *Cormier,* 358 Mass. 736, 738 (1971). By giving notice on May 18, 1984, Chase exercised his option within the time limitations provided in § 4.01 of the lease.

Section 4.01 provides that the option may be exercised "at any time during the period commencing on April 30, 1982, and ending on the last day of the extended term." The clause in § 4.01 providing that the option be "exercisable upon not

less than 30 days nor more than 90 days written notice" establishes a time frame for the closing, not the exercise of the option. *Roberts-Neustadter Furs, Inc.* v. *Simon,* 17 Mass. App. Ct. at 269.

A contract should be construed to give it effect as a rational business instrument and in a manner which will carry out the intent of the parties. See *McMahon* v. *Monarch Life Ins. Co.,* 345 Mass. 261, 264 (1962); *Shane* v. *Winter Hill Fed. Sav. & Loan Assn.,* 397 Mass. 479, 483 (1986). Assuming that the intention of the parties was to effectuate the conveyance of the premises upon the exercise of the option, the contract may be construed as requiring the lessor to remedy defects in title susceptible of being remedied where the lessor had actual notice of the title defect shortly after the exercise of the option. As indicated above, in addition to the fact that Jager was clearly aware of the fact that the 1977 Trust held title to only four parcels at least as early as July 16, 1984, as indicated by his action of forwarding the draft of the deed for only four parcels, he had received two letters in early August (from Silver and Hanrahan) calling attention to the title defect.

It is clear from the language of the lease that the intention of the parties was that both lessor and lessee would endeavor to use their best efforts to insure that the title to the premises, 1199 Worcester Road, was clear and marketable. Sections 4.03 and 4.08 expressly and impliedly provide for an affirmative obligation on the part of the lessor to cure a title defect, particularly where the lessor was aware of such title defect. Cf. *Widebeck* v. *Sullivan,* 327 Mass. 429, 433 (1951); *Stabile* v. *McCarthy,* 336 Mass. 399, 402-406 (1957); *Sechrest* v. *Safiol,* 383 Mass. 568, 570 (1981). Compare *Sachs* v. *Hirshom,* 16 Mass. App. Ct. 704 (1983). Section 4.03 further provides that upon exercise of the option to purchase, on the closing date, the lessor "shall sell and convey to the Lessee good and marketable title to the Demised Premises," i.e., all five parcels. In § 4.08(e), the lessor covenants that it will "use its best efforts" to have executed, acknowledged and delivered to lessee the deed in accordance with § 4.03.

Finally, the trial judge did not err in ruling that, in the circumstances of this case, where the intent was to convey

title to the premises (all five parcels) to the 1977 Trust, the lack of ownership of one of the parcels constituted a title defect making the title unacceptable as contemplated by the contract. See *Mishara* v. *Albion,* 341 Mass. 652, 655 (1961). See also *Fall River Sav. Bank* v. *Callahan,* 18 Mass. App. Ct. 76, 81 (1984); *Mucci* v. *Brockton Bocce Club, Inc.,* 19 Mass. App. Ct. 155, 159 (1985). The title defect is "susceptible" of being remedied. Record title to the fifth parcel is in the Butler Trust, and the surviving trustee of that trust has indicated that he is prepared to take the steps necessary to remedy the conveyancing error.

We think that in light of the lessor's contractual obligations and ability to remedy the title defect, the trial judge's order that the plaintiffs convey the property to the defendant within ten days of receiving record title to the fifth parcel was reasonable.

*Judgment affirmed.*