**McDONALD'S
CORPORATION, Plaintiff,**

v.

**LEBOW REALTY TRUST and Lawrence
N. Lebow, as he is Trustee of the
Lebow Realty Trust, Defendants.**

**Civ. A. No. 85–4739–Y.**

United States District Court,
D. Massachusetts.

April 11, 1989.

Peter Ellis, Brandon White, Foley, Hoag, Eliot, Boston, Mass., for plaintiff.

Alan Rose, Nancy Watters, Nutter, McClennen, Fish, Neil Lerer, Martin Magnuson McCarthy & Kenney, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION

YOUNG, District Judge.

The plaintiff lessee, McDonald's Corporation, ("McDonald's") and the defendant lessor, Lebow Realty Trust, and its trustee, Lawrence Lebow, ("Lebow"), are before this Court on cross motions for summary judgment seeking interpretation of a real estate lease ("lease"), entered into on May 30, 1972, commencing on October 1, 1972, and terminating twenty years later on September 30, 1992. There are no material facts in dispute and the issue focuses on the interpretation of two provisions of the lease, *viz.*, Paragraph 15 "Lessee's Right of First Refusal" and Paragraph 24 "Refusal on Sale".

The first paragraph at issue, Paragraph 15, contains two provisions: 1) the lessee's right to relet in the event of a bona fide third party offer to lease the premises during the first ten years of the lease, and 2) the lessee's right:

> to purchase the premises at any time during the term of this Lease by giving the Lessor 120 days written notice of such intent. The agreed-upon price for the sale of the premises under this provision is Three hundred thousand dollars ($300,000).

*See* Complaint, Exhibit A, p. 6. The parties crossed out an extension of this purchase option beyond the twenty year term of the lease and initialed the modification of the provision as originally written.

The second paragraph at issue, Paragraph 24, contains but a single provision, *viz.*, that, in the event of a bona fide third party offer to the lessor to purchase the premises, the lessee has the right to accept or refuse to purchase the premises on the same terms as the outside offer. The provision grants the lessee a right of first refusal. This right is exercisable only during a fifteen-day period after the lessor's notice of the third party offer to the lessee, but the right of first refusal is to operate throughout the term of the lease or "... any extension thereof...." *See* Complaint, Exhibit A, p. 8.

On or about November 5, 1985, Lebow received a bona fide offer to purchase the premises for $450,000 and gave notice of the proposed sale to McDonald's on November 12, 1985, pursuant to Paragraph 24 of the lease. Thirteen days later, McDonald's gave notice of its intent—not to exercise its right of first refusal—but instead to exercise its option to purchase for $300,000 pursuant to Paragraph 15 of the lease. The lease is silent concerning the relationship between these two lease options. It gives no express guidance concerning whether the exercise of one option has any effect upon the ability to exercise the other.

In his motion for summary judgment, Lebow argues that the lease is ambiguous and that when he gave notice to McDonald's of its right to exercise its option of first refusal at $450,000, that notice vitiated McDonald's fixed price purchase option. In Lebow's view, therefore, McDonald's then had the right either to purchase the premises at $450,000 or, as happened here, decline to exercise its right of first refusal and thus lose its opportunity to purchase when Lebow sold the property to the third party. *Cf. Roy v. Greene*, 404 Mass. 67, 533 N.E.2d 1323 (1989) (discussing when a person may be deemed to have exercised a "right of first refusal" in the absence of contractual definition or explanation). McDonald's, in its cross motion for summary judgment, argues that the two options are free from ambiguity and function independently of each other. It seeks specific performance of its purchase option upon its tender of the fixed price of $300,000. This case thus presents the single narrow issue of whether the party first exercising one of the two options here involved fixes the rights and liabilities of the other party with respect to the second option. *See generally* R. Shoshinski, *Ameri-*

*can Law of Landlord & Tenant* 622–23 (Lawyers Co-operative Publishing Co. 1980 & Supp. 1989 at 271 nn. 13–15). This issue is one of first impression under the law of Massachusetts.

So far as is relevant, the controlling Massachusetts law may be quickly limned. It is well settled under Massachusetts law that courts should construe written contracts according to the intent of the parties at the time of contracting, *Sea–Land Service, Inc. v. R.V. D'Alfonso Co., Inc.*, 727 F.2d 1, 2–3 (1st Cir.1984), in light of what constitutes a rational business instrument effectuating the parties' intent. *Berkal v. DeMatteo Constr. Co.*, 327 Mass. 329, 98 N.E.2d 617 (1951); *Lewis v. Chase*, 23 Mass.App.Ct. 673, 505 N.E.2d 211 (1987), *rev. den.* 399 Mass. 1105, 507 N.E.2d 1056 (1987); *Fay, Spofford and Thorndike, Inc. v. Massachusetts Port Authy.*, 7 Mass. App.Ct. 336, 387 N.E.2d 206 (1979). Moreover, since an option provision is a contractual right which may be exercised unilaterally for the benefit of the one who holds it, *Lewis v. Chase*, 23 Mass.App.Ct. at 676, 505 N.E.2d 211, and is thus likely to be exercised when advantageous to the holder and perhaps disadvantageous to the people subject to it, such a unilateral contract right can only be exercised by turning all the required corners squarely, *Tristram's Group, Inc. v. Morrow*, 22 Mass.App.Ct. 980, 496 N.E.2d 176 (1986) (rescript), citing *Loitherstein v. Int'l Bus. Mach. Corp.*, 11 Mass.App.Ct. 91, 94, 413 N.E.2d 1146 (1980). Such provisions are construed strictly against the option holder. *Westinghouse Broadcasting Co. v. New England Patriots Football Club, Inc.*, 10 Mass.App.Ct. 70, 73, 406 N.E.2d 399 (1980). Beyond these general principles, Massachusetts cases afford little guidance in resolving the present dispute.[1]

---

**1.** Indeed, the principle of strict construction applied to an option's exercise is somewhat beside the point in the present case, as there is no dispute that McDonald's declined to exercise its right of first refusal in a procedurally proper fashion and, instead, gave proper written notice of its election to exercise its purchase option within the term of the lease and the time limitations of Paragraph 15 thereof. Moreover, the

cases cited above confirm that it is the procedure for exercising an option that is strictly required. There is no suggestion in these cases that the language of option provisions themselves is somehow to be singled out under Massachusetts law for a crabbed or unduly narrow construction. Instead, a fair reading of the language of the option provision itself determines its role in the execution of the contract and the

As noted above, in the present case the lease is silent on the relationship between McDonald's two options. There is no explicit language to the effect that, if Lebow had an outside offer and notified McDonald's, such notice or McDonald's subsequent refusal to exercise its right of first refusal would void McDonald's purchase option. Close analysis of the undisputed facts does, however, shed a bit more light on the commercial situation between the parties. It appears that Lebow would not extend the $300,000 fixed price purchase option beyond the twenty year term of the lease because the written provision so providing was crossed out by the parties and initialed. Thus it appears to be the intent of the parties that the fixed price would cover anticipated appreciation in property value for a twenty year period but not beyond. This interpretation is supported by the presence of careful provisions for escalation of rental amounts and improvements contained in Paragraphs 1, 2, and 14 of the lease which suggest that the parties considered the expected appreciation of the property's value to be recoverable by Lebow in rental payments. It can also be inferred—though the inference is somewhat more tenuous—that the fixed price purchase option was not intended to reflect appreciated value since the parties could easily have included an escalator provision in Paragraph 15 which was comparable to those used in Paragraphs 1, 2, and 14. Had the purchase option been intended to reflect the fair market value at the time of the option's exercise, the lease could easily have so provided and have fixed a method for determining such value. Instead, this lease contains a clear fixed price purchase option. In contrast, the right of first refusal in Paragraph 24 extends beyond the term of the lease and therefore presumes a bona fide third-party offer based on market value at that future time.

Against this background, it is the duty of this Court, having reference to the per- suasively reasoned opinions from other jurisdictions and such other sources of law as may be available, to predict the rule that the Massachusetts Supreme Judicial Court would fashion were it confronted with this issue. *See Massengale v. Transitron Electronic Corp.*, 385 F.2d 83, 86 (1st Cir.1967).

A number of decisions have construed the relationship between the two options at issue in this case. The rationale of most such decisions, however, is confined to a construction of the individual instruments there present. *See, e.g., Crowley v. Texaco, Inc.*, 306 N.W.2d 871 (S.D.1981) (summarizing the fact specific nature of the relevant federal and state decisions). *See generally*, Annot., *Construction and Effect of Options to Purchase at Specified Price and at Price Offered by Third Person, Included in Same Instrument*, 22 ALR 4th 1293 (1983). Moreover, in many of the decisions upon which MacDonald's relies, the lease itself expressly spoke to the relationship between the two provisions. *See, e.g., Gulf Oil Corp. v. Chiodo*, 804 F.2d 284, 285 (4th Cir.1986); *Shell Oil Co. v. Prescott*, 398 F.2d 592, 593 (6th Cir.1968), *cert. denied*, 393 U.S. 1017, 89 S.Ct. 621, 21 L.Ed.2d 562 (1969); *Texaco v. Creel*, 310 N.C. 695, 314 S.E.2d 506, 507 (1984); *Amoco Oil v. Snyder*, 505 Pa. 214, 478 A.2d 795 (1984); *American Oil Co. v. Ross*, 390 So.2d 90 (Fla.Dist.Ct.App.1980) *rev. denied*, 399 So.2d 1145 (Fla.1981).

While these decisions are thus not directly in point, they serve to shed some light on the commercial realities that lead parties to execute leases including these two provisions. As Judge Haynesworth, writing for the Fourth Circuit in *Chiodo*, explains succinctly:

> [I]t is common knowledge that fixed purchase options in leases are usually at prices substantially higher than the lessor's notion of the present value of his land.

\* \* \* \* \* \*

manner in which it is to be exercised. *Roberts-Neustadter Furs, Inc. v. Simon*, 17 Mass.App.Ct. 262, 264–69, 457 N.E.2d 668 (1983), *rev. den.* 391 Mass. 1102, 459 N.E.2d 826 (1984). "So long as contract language is plain and free from ambiguity, it must be construed in its 'ordinary and usual sense.'" *The Equitable Life Assurance Society of the United States v. Porter-Englehart*, 867 F.2d 79, 87 (1st Cir.1989), quoting *Boston Edison Co. v. FERC*, 856 F.2d 361, 365 (1st Cir.1988) (both cases applying Massachusetts law).

388

In the early days of a long term commercial lease, there is a real possibility that the lessor may wish to sell the property for a price substantially less than the fixed price option. At that time, the flow of rental income, as stipulated in the lease, may be a substantial limitation upon what would otherwise be the market value of the improved real estate unencumbered by a long term lease. There is no reason that the parties to a lease should not be allowed to deal with that situation by giving the lessee a right of first refusal if the lessor wishes to sell for an amount less than the fixed price option.

804 F.2d at 286.

It seems to this Court that the reciprocal reasoning applies with equal force. That is, during a period of rising real estate values there appears no logical or equitable reason why the parties ought not be free to contract for a fixed price purchase option (representing their individual best judgments concerning the fair market value of the land over the period during which such option might be exercised) as well as a right of first refusal in the lessee to permit it to meet a *bona fide* third party offer. There is nothing intrinsically inconsistent or ambiguous in a lease containing both provisions. The fixed price purchase option guarantees the lessee the opportunity to purchase at a negotiated price thus acting as an inducement to it to make improvements in the leasehold without irrevocably committing it to an ultimate purchase. The lessor, for its part, is protected as the fixed price represents that price at which the lessor is willing to sell the premises over the period of the exercise of the option and presumably represents the lessor's best estimate of what it could get for the premises during the period within which the option may be exercised. Likewise, the right of first refusal represents an additional inducement to the lessee to enter into the lease and make improvements, knowing that it has an option to meet any *bona fide* third party offer and thus purchase the premises rather than be dispossessed.

In circumstances such as those present here, where the lease contains both provisions, notice of a *bona fide* third party offer to purchase should equitably be construed as requiring the lessee either to meet the third party offer (the right of first refusal) or to exercise promptly the fixed price purchase option. The two clauses thus ought not be construed to be totally independent. If the lessee declines to act, *i.e.*, refuses to meet the *bona fide* third party offer but also refuses to exercise its fixed price purchase option, then the lessee ought equitably lose its fixed price purchase option and the lessor ought be free to sell the premises to the third party. A contrary result would deprive the lessor of its ability to alienate the premises to a good faith third party purchaser and, instead, lock the lessor into what might well be an economically improvident long term lease. Such a result would read far too much into the right of first refusal, a provision which appears to the Court clearly to contemplate that the lessor may entertain *bona fide* third party offers to purchase during the lease term. *See Roy v. Greene*, 404 Mass. at 69–71, 533 N.E.2d 1323 (oral provision, simply providing a right of first refusal and not otherwise defined, contemplates such a situation).

This is also the teaching of *Shell Oil Co. v. Blumberg*, 154 F.2d 251, 252–53 (5th Cir.1946) and *Shell Oil Co. v. Jolley*, 130 Vt. 482, 296 A.2d 236, 241 (1972). In *Blumberg*, Shell refused to exercise its right of first refusal and the lessor sold the property to a third party. Three years later Shell attempted to exercise its fixed price purchase option. The Fifth Circuit held that Shell had lost its right to purchase at the fixed price since the lessee, on notice, must make its "election" between the outside offer and the fixed price purchase option within the limited time of the notice provision to exercise its right of first refusal. The *Blumberg* decision thus cannot be read to hold that declining to exercise the right of first refusal and simultaneously exercising the fixed price purchase option is inconsistent or inequitable. As the Supreme Court of Vermont succinctly observed twenty-six years later in *Jolley:*

Shell[, apparently having learned nothing,] lost its right to exercise its fixed-price option when it had full knowledge of the forty-five thousand dollar offer to [the lessor] from [the third party interested in making a bona fide purchase], *at which time it could have exercised either of its dual options.* The action is in equity and those who seek equity must be prepared to give equity. Shell could not, consistent with any principles of fair and honest dealing, allow [the lessor] to sell to [the third party], with its full knowledge of such transaction, and with its then refusal or failure to exercise either of its two options, and at a time when the property had appreciated in value to an amount more than three times the fixed-option price, insist upon specific performance of the fixed-price option provisions. Such a result would be unconscionable, and offensive to all equitable principles.

296 A.2d at 241 (emphasis added). To the same effect is *Sinclair Refining Co. v. Allbritton*, 147 Tex. 468, 218 S.W.2d 185, 189 (1949), which held that the right of first refusal option is "merely a device by which the lessor can induce an acceleration of the lessee's decision to purchase [pursuant to the fixed price option]". *See also Butler v. Richardson*, 74 R.I. 344, 60 A.2d 718, 722 (1948).

Here, while McDonald's declined to meet the third party offer as part of its first refusal option, it gave prompt written notice of its election to exercise its fixed price purchase option within the term of the lease and the time limitations of Paragraph 15. This Court holds that the fixed price purchase option is separate and distinct from the right of first refusal if promptly exercised upon the notice of a *bona fide* third party offer.[2] The fixed price purchase option was an unconditional offer to sell at the fixed price which remained in effect, under the terms of this lease,

throughout the entire lease term. It was, therefore, fully capable of acceptance notwithstanding Lebow's subjective unwillingness to sell at the lower fixed price once he secured a higher third party offer. *Shayeb v. Holland*, 321 Mass. 429, 73 N.E.2d 731 (1947). Since McDonald's properly exercised its option to purchase at the fixed price, its acceptance of Lebow's unconditional offer to sell at that fixed price ripened into a bilateral contract, obliging Lebow to convey the land to McDonald's upon payment of the agreed-upon price and the other conditions of sale in the lease. *American Oil Co. v. Cherubini*, 351 Mass. 581, 585, 222 N.E.2d 892 (1967).

Lebow, however, would have this Court construe the dual options together as inconsistent and, where the first option to be exercised is in conflict with the second, give effect to the first and reject the second. *See Northwest Racing Association v. Hunt*, 20 Ill.App.2d 393, 156 N.E.2d 285 (1959). There are two problems with the first-in-time argument in the circumstances of this case.

First, McDonald's did not exercise the first refusal option; it refused to exercise its right of first refusal and, instead, promptly exercised its right to purchase at the fixed price. Second, the lease in *Northwest Racing* had an explicit provision that the fixed price purchase option would be cancelled and revoked if the right of first refusal was not exercised within the time specified in the lease upon notice of the terms of a *bona fide* purchase offer. This Court will not rewrite the present lease to include such a provision which the parties could have drafted on their own had they intended to do so. Here, by contrast, the two provisions are reconcilable so long as, as is the present case, McDonald's promptly exercises its right to purchase at the fixed price. *See Gollberg v. Bramson Pub. Co.*, 685 F.2d 224 (7th Cir.1982).

**2.** This Court's decision in *Shell Oil Co. v. Hennessy*, 639 F.Supp. 626 (D.Mass.1986) is not to the contrary since, in that case, the equitable order which permitted Shell to exercise its fixed price purchase option after sale to a third party was predicated on the collusive action of the lessor and the third party in failing to timely notify Shell of the third party offer. To the extent dicta in that case may be read more broadly, this Court eschews it in favor of the analysis herein.

Lebow also contends that as matter of law a fixed price purchase option is cut off by the lessor's notice of a third party offer when the parties have failed to designate which option takes precedence. Lebow cites *Tarrant v. Self,* 180 Ind.App. 215, 387 N.E.2d 1349, 1353 (1979) for this proposition. The fixed price purchase option in the *Tarrant* case, however, was not a present interest which could be exercised throughout the lease term as is the case here, but rather a future interest which vested only upon the expiration of the lease. Thus, the *Tarrant* court was faced with the situation which occurs when, during the lease term, the lessor obtains a *bona fide* third party offer and gives proper notice of it to a lessee who holds a present right of first refusal and a future interest in purchasing at a fixed price at the end of the lease term, which interest will vest only at that future time. Such is not the present case. Here, as the Vermont Supreme Court held in *Shell Oil Co. v. Jolley,* "[McDonald's] could have exercised either its fixed-price option or its option for first refusal." 296 A.2d at 240.

In this case, the Court holds that the fixed price purchase option was validly exercised by McDonald's through its prompt action even though it had received notice of the higher third party offer and had declined to exercise its right of first refusal. Accordingly, this Court orders specific performance of the ensuing contract for the sale of the real property to McDonald's at a purchase price of Three Hundred Thousand Dollars ($300,000.00) upon McDonald's tender thereof.

SO ORDERED.