**SPECTRUM HOLOBYTE CALIFORNIA, INC.**

v.

**John W. STEALEY.**

**Civ. No. Y–95–48.**

United States District Court, of Maryland.

May 9, 1995.

John Henry Lewin, Baltimore, MD, and David M. Furbush, and Thomas H. Carlson, Palo Alto, CA, for plaintiff.

Richard D. Bennett and Joseph H. Hovermill, Baltimore, MD, for defendant.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

In June, 1993, Spectrum Holobyte ("Spectrum") merged with Microprose Inc. ("Microprose"), a company co-founded by John Stealey. Pursuant to the merger, an Option Agreement was reached which allowed Spectrum to purchase up to one-half of the total number of shares in Microprose owned by Stealey if notice of exercise was given by

December 18, 1994.[1] Spectrum mailed notice of its intent to exercise the option to Stealey and others[2] in November and early December, 1994 and placed the funds for purchase in an escrow account,[3] but Stealey never transferred the shares. Spectrum now seeks specific performance of the Option Agreement, a declaration that it is entitled to the shares in dispute, and an order prohibiting the wasting of those shares prior to transfer. The Court heard the evidence presented by the parties on April 27 and 28, 1995. The findings of fact and conclusions of law as stated herein are in accordance with the provisions of F.R.C.P. Rule 52(a) whether or not so specifically stated.

## I.

■ Stealey first asserts that notice of intent to exercise was improperly and ineffectively given by Spectrum. The Option Agreement provided that notice could either be given by personal delivery or could be sent to an address inserted in the Option Agreement, but the lines provided for the listing of Stealey's address on the Option Agreement were left blank. Stealey contends that the absence of a specific address left personal delivery as Spectrum's only valid means of giving notice. He asserts that Spectrum therefore allowed its option to purchase his shares in Microprose to expire by failing to give notice by personal delivery by December 18, 1994.

### A.

Stealey first argues that the plain language of the contract made clear that personal delivery was Spectrum's only option for giving notice if no address was listed. The Option Agreement provides that notice shall be deemed to have been given "upon personal delivery" or "in writing addressed to the Shareholder at the address indicated below."

Although there is no language in the contract specifically requiring personal delivery when no address is indicated, Stealey urges the Court to read such a requirement into the Option Agreement in lieu of the Court rewriting the contract to insert "the phrase 'to any address reasonable under the circumstances.'" Stealey insists that the Court should not alter the terms of an explicit, written contract but should construe the Option Agreement against Spectrum which drafted the disputed language.

Section § 1–201(38) of the Maryland Uniform Commercial Code[4] allows a party obligated to "send" notice when there is no address identified "to any address reasonable under the circumstances." Stealey testified that he could think of no place that important mail should be sent to other than his legal address in Florida. Stealey's legal address was reasonable under the circumstances. Stealey's failure to open and read the notices of exercise from Spectrum sent to that address prior to the date of expiration of the option did not defeat Spectrum's notification. *See,* § 1–201(26) Md. U.C.C.

Stealey suggests that parties are allowed to contract around statutory contract provisions and that therefore the notice provision in the Option Agreement superseded the provisions of § 1–201(38). Such statutory contract provisions are implied into every contract unless the parties explicitly intend otherwise. *See, Green v. Lehman,* 544 F.Supp. 260–263 (D.Md.1982). Stealey testified that he never considered, or even read, the language of the notice provision. Further, there is no evidence to suggest that the absence of an address in the Option Agreement was anything other than an oversight. The parties did not intend to avoid the language of § 1–201(38).

Spectrum was entitled to provide notice of its intent to exercise by personal delivery or

1. Approximately 1.8 million shares were subject to the Option Agreement. A conversion ratio was established at the time of merger allowing holders of Microprose stock to receive shares in the corporate entity arising from the merger.

2. Notice was mailed to Stealey's legal address in Florida, his work address, his wife's residence, and the offices of a stockbroker and attorney

used by Stealey in previous transactions with Spectrum.

3. The escrow account was established at the brokerage to which notice was mailed.

4. This section is applicable to investment securities such as those governed by the Option Agreement.

by mail to any reasonable address under the circumstances.[5] Spectrum provided appropriate notice of intent by sending notice to Stealey's legal address.

B.

Stealey argues in the alternative that the listing of an address was an essential term of that part of the notice provision allowing notification by mail, and that the failure to list an address rendered Spectrum's option to notify by mail unenforceable. He asserts that, under the agreement, the only legally binding means of exercising the option was by personal delivery.

■■ Materiality of a contract term is always determined with reference to the intent of the parties. *See, Lewis v. Chase,* 23 Mass.App.Ct. 673, 505 N.E.2d 211, 214 (1987). Stealey testified that he was unaware of the terms of the notice provision and the absence of an indicated address. Further, there is no evidence in the record indicating that any part of the notice provision was a subject of bargaining between the parties. The notice provision as a whole was not a material term and the absence of a specific address does not impair the enforceability of the notification by mail provision of the Option Agreement.

Spectrum properly and effectively exercised its option to purchase Stealey's shares in Microprose.

II.

Stealey also contends that the option should not be enforced against him because Spectrum breached a Consulting Agreement signed concurrently with the Option Agreement. The Consulting Agreement, which Stealey claims was part of a single contract with the Option Agreement,[6] provided for payment for consulting services as well as the repayment of a loan made by Stealey to Microprose.

Stealey asserts that Spectrum failed to make a timely loan payment in June, 1994, as well as other required payments,[7] and that these actions amounted to a breach which extinguished Stealey's obligations under the Option Agreement. He testified that these failures caused him great hardship and that he discussed the possibility that the missed club and phone payments might amount to a breach with Spectrum. Nonetheless, Stealey failed to inform Spectrum of the missed loan payment until after the expiration of the option period and continued to accept all benefits under the Consulting Agreement after the nonpayment of the loan installment.

■■ A party who continues to accept the benefits of a bilateral contract after a breach generally waives the breach as a defense to his own failure to perform the contract. *See, John B. Robeson Assoc. v. Gardens of Faith,* 226 Md. 215, 222–23, 172 A.2d 529 (1961). Stealey eventually received all of the benefits of the Consulting Agreement,[8] and indeed accepted some of those benefits after deciding that he would not transfer his shares in Microprose pursuant to the terms of the Option Agreement.

Moreover, a Court in equity will usually allow a good faith defaulter an opportunity to cure a claimed breach. *See, Trotter v. Lewis,* 185 Md. 528, 536, 45 A.2d 329 (1946). There was no indication at trial either that Spectrum's breaches were intentional or that it failed to cure them within a reasonable period of time following notification. Stealey also impaired Spectrum's ability to cure by remaining silent about the breach until the expiration of the option period.

By accepting the full benefit of the bargain, and by failing to notify Spectrum that he considered it in breach for its failure to

---

5. Stealey's assertion that Spectrum could or should have called him to give notice is not supported by the language of the Option Agreement or any relevant statutory provision.

6. The Court will assume for the purposes of this opinion that it was the intent of the parties to have the obligations of the two agreements be interdependent.

7. Specifically, Stealey alleges repeated delays in payment for country club fees and cellular phone expenses. He acknowledges that the payments were eventually made following complaints to Spectrum.

8. This included payment, with interest, of the missed loan installment.

make the loan payment timely, Stealey waived any alleged breaches. Stealey's obligation to transfer his shares in Microprose pursuant to the Option Agreement was not relieved by any alleged breaches by Spectrum of its duties under the Consulting Agreement.

## ORDER

In accordance with the attached Memorandum, it is this 9th day of May, 1995, by the United States District Court for the District of Maryland, ORDERED:

1. That Plaintiff and Defendant specifically perform their respective duties under the Option Agreement within fourteen days.

2. That a copy of this Memorandum and Order be mailed to counsel for the parties.