DECISION
This breach of contract action involves a truck lease service agreement between the plaintiff, United Truck Leasing ("United"), and Bread and Circus. Bread and Circus later assigned the lease service agreement to the defendant in this action, Cornucopia ("Cornucopia"). Pursuant to the lease agreement, this action is governed by the laws of the State of Massachusetts.
Facts/Travel
In February 1982 the plaintiff and Bread and Circus entered into a lease service agreement for vehicle # 22741, which was delivered on March 5, 1984, for a term of five years. In April of 1985, the parties signed a valid addendum assigning the lease from Bread and Circus to the defendant, Cornucopia, which provided that the lease could be terminated on the second anniversary date of delivery or any anniversary date thereafter. Joint Exhibit 1; Contract Addendum. In December 1985, Cornucopia sent a written notice of its intent to terminate the lease to be effective on March 5, 1986, the second anniversary date of the lease. The letter also included a request for the purchase price of the vehicle "[within the next few days." Joint Exhibit 2. There was no further correspondence between the parties until March 5, 1986, when Cornucopia returned the vehicle. On March 6, 1986, Cornucopia sent a letter confirming the termination of the lease and return of the vehicle. Joint Exhibit 3. On March 20, 1986, United sent Cornucopia a letter stating that Cornucopia was in violation of Paragraph 11 by "failing to make payment of all rental charges due on said account" and that payment was due within five days. Joint Exhibit 4. United also sent a similar letter to the original lessee, Bread and Circus, stating same. Joint Exhibit 5. Cornucopia responded in a March 26, 1986 letter by requesting a statement of any outstanding invoices then due. Suit was filed by the plaintiff shortly thereafter.
In its complaint, the plaintiff alleges that the defendant is in breach of the truck lease service agreement. Specifically plaintiff contends that the defendant had an obligation to purchase the truck pursuant to Paragraph 11, Subsections A and D. In support of its argument, the plaintiff maintains that the defendant expressed its intention to purchase the truck in the termination letter of December 1985. As a result of the defendant's breach, the plaintiff argues it possessed the right to terminate the lease, demand the cost of the vehicle immediately pursuant to Paragraph 11D, and collect expenses for licenses, taxes, interest, and collection fees. The plaintiff now seeks an order demanding that the defendant purchase the vehicle, and a hearing to determine subsequent damages regarding attorney's fees, lost profits and opportunity pursuant to Paragraphs 11D and 13 of the original lease service agreement, and Paragraph 10 of the Addendum.
The defendant contends that it properly terminated the agreement pursuant to Paragraph 11A. The defendant also avers that the plaintiff failed to exercise its option to sell the vehicle in a timely manner and is thus estopped from enforcing the purchase of the vehicle. Additionally, the defendant argues that the plaintiff improperly terminated the agreement based on the defendant's alleged breach and thus is not entitled to damages under the contract and is further unable to present evidence regarding lost profits and lost opportunity.
Breach of Contract
The interpretation of a written contract or lease is a question of law, not of fact. Lexington Ins. Co. v. All RegionsChemical Labs Inc. et al., 647 N.E.2d 399, 400 (Mass. 1995). When a court reviews the contract language, Massachusetts law dictates that in the absence of ambiguity, the express terms of a contract will be enforced. ER Holdings, Inc. v. Norton Co. etal., 735 F. Supp. 1094 (D. Mass. 1990); "Should the court find the contract unambiguous, we interpret it according to its plain terms." Den Norske Bank As v. Nat'l Bank of Boston, 75 F.3d 49, 52 (1st Cir. 1996); Ferris v. Marriott Family RestaurantsInc., 878 F. Supp. 273, 275 (D. Mass. 1994).
The assignee's option to terminate the lease agreement is governed by Paragraph 6 of the Addendum which allows that assignee to purchase the vehicle on the second anniversary of the delivery date of the vehicle. See Addendum, Paragraph 6. The methods and procedure governing termination and purchase of the leased vehicle are then governed by Paragraph 11 of the original truck lease service agreement. Part 11A states in pertinent part: ". . . either party may terminate this lease as to such vehicle prior to the expiration of the term of the lease of such Vehicle . . . by giving to the other party at least 60 days prior notice of its intent to do so." Pursuant to this provision, and in compliance with the lease contract provisions, Cornucopia sent a letter of request to terminate the truck lease dated December 31, 1995, allowing approximately 62 days' prior notice to the date of termination.
Paragraph 11A continues "In the event that either party shall so elect to terminate, Customer shall, at Lessor's option, purchase the Vehicle . . . with respect to which such option is exercised in accordance with Paragraph 11D." The term "option" is defined as "right of election to exercise a privilege." Black'sLaw Dictionary 6th Edition, p. 1094. The structure of this option clause bestows upon United the right of election to direct the Customer to purchase the vehicle. As an option provision confers a unilateral right to compel performance exclusively for the benefit of the holder, it is to be strictly construed."Lewis v. Chase, 505 N.E.2d 211, 213 (Mass. App. Ct. 1987).
The exercise of this option is governed by Paragraph 11. "In the event Customer (pursuant to Paragraph 11A) shall be required to purchase any of the Vehicles, or should Lessor (pursuant to Paragraph 11B or 11C) demand of Customer that it purchase any of the Vehicles, Customer shall purchase each Vehicle for cash at or within the time aforesaid for its Schedule "A" Value as shown on Schedule A. . . ."[1]
The language of this provision emphasizes that the Lessor retains the power to require the Customer to purchase the vehicle, and that purchase of the vehicle is not an automatic, mandatory consequence of termination. This is evidenced by two other provisions in the contract that allow for the return of the vehicle upon termination.[2] See, Baybank Middlesex v. 1200Beacon Prop., Inc., 760 F. Supp. 957, 963 (D. Mass. 1991) (holding that contract must be interpreted as a whole and effect given to all its provisions).
Additionally, the exercise of the option and requirement of purchase is limited in duration by the term "at or within the time aforesaid." Paragraph 11D. "Aforesaid" means "before, or already said, mentioned, or recited; premised. Preceding; opposite of following." Black's Law Dictionary, Sixth Edition, p. 61.
Review of this provision indicates that there is only one other reference in Paragraph A as to time mentioned, namely, the sixty-day period required for notice prior to termination. The clause, as read with this sixty-day time limitation, prescribes that the purchase of the vehicle, if any, must occur at or within the sixty days prior to termination of the contract. To construe this provision otherwise, would render the term "at or within the time aforesaid" meaningless. ". . . [A] contract must not, whenever possible, be construed so as to render any of its terms meaningless." Baybank, 760 F. Supp. at 963 (D. Mass. 1991). In order for the purchase of a vehicle to occur according to this time limitation, the option held by the Lessor to compel purchase must thus be exercised prior to the expiration of the sixty day time period.
On December 31, 1985, Cornucopia sent a registered letter of notice of termination to United effective on March 5, 1986, as well as a request for the purchase price of the vehicle. United did not respond to the notice of termination and did not supply Cornucopia with any requested figures for a purchase price. Even assuming, arguendo, that the purchase price was agreed upon according to Schedule A, United failed to exercise its option to require purchase of the vehicle by allowing the prescribed time period for purchase to lapse without responding or indicating its intent. "An option expires if not exercised within the time limited." Cities Service Oil Company v. National Shawmut Bank ofBoston, 342 Mass. 108, 172 N.E.2d 104 (1961) (citing Bickford v.Dillon, 321 Mass. 82, 84, 71 N.E.2d 611, 612), Christian v.Giard, 330 N.E.2d 855 (Mass. App. 1975). Failure of an optionee, without due excuse, to make and communicate his election within the prescribed time period terminates his right. 17A Am.Jur. 2d, Section 85. Consequently, Cornucopia had no obligation to purchase the vehicle when United's option had expired. Cornucopia's failure to purchase the vehicle cannot then be deemed a breach of the contract. "One who himself induces the failure of the other to perform within the time agreed upon can not take advantage of such failure, either by enforcing a prescribed penalty or forfeiture, or by claiming damages for breach." Corbin on Contracts, Section 767, 541-543.
The plaintiff was again notified by certified letter on March 6, 1986, that the vehicle had been returned and the contract was terminated. Although some courts have held that an option can be exercised within a reasonable time after the close of a period, the plaintiff did not respond until two weeks after the return of the vehicle, and the letter fails to mention the exercise of the option to compel purchase under the contract or any obligation to purchase the vehicle but instead states that "rental charges" were due on the account. 17A Am.Jur.2d, Section 85; Joint Exhibit 4. At no time was the defendant notified that United planned to exercise its option to compel purchase or had exercised its option to compel purchase even in the ensuing communications.
Because the defendant was relieved of its obligation to purchase the vehicle upon expiration of the option period held by the plaintiff, and the plaintiff failed to exercise its option to purchase within a reasonable time thereafter, the defendant cannot be held in breach of the contract. As a result, the plaintiff is unable to terminate the contract pursuant to Paragraph 11 based on a default by Cornucopia. Accordingly, the plaintiff is not entitled to collect the purchase price of the vehicle or any costs associated therewith, including lost profit and opportunity and damages.
Counsel shall prepare the appropriate judgment for entry in accordance with this decision.
[1] Paragraph 11B provides for termination and delineates the Lessor's rights upon the Lessee's insolvency, filing of a voluntary petition in bankruptcy or receivership. Upon written notice to the Customer, the Lessor may, at its option, demand immediate purchase of the vehicle by the Customer. Paragraph 11C sets forth Lessor's rights upon Customer's breach or default, which allows the Lessor, without notice or demand, to take possession of the Vehicle (s). Subsections 3, and 4 apply to continuing default and costs and expenses in connection with collection and enforcement of Lessor's rights.
[2] Paragraph 1A: "Upon expiration or termination of this lease . . . Customer shall (with the exception of those vehicles purchased pursuant to Article 11 hereof) return
said vehicle . . . to a place designated by Lessor. . . ." (Emphasis added.) Paragraph 2B provides "Each vehicle will be promptly returned to Lessor's facility . . . upon the termination of such lease unless Customer shall have purchased the vehicle as provided hereinafter."